**Edward NELSON, Plaintiff–Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant–Appellee.**

**No. 87–2840.**

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1988.

Decided Aug. 30, 1988.

Robert Grossinger, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiff-appellant.

Donna L. Calbert, Asst. Regional Counsel, Dept. of Health and Human Services, Chicago, Ill., for defendant-appellee.

Before CUDAHY, RIPPLE and MANION, Circuit Judges.

MANION, Circuit Judge.

Edward Nelson appeals from the district court's order granting summary judgment in favor of the Secretary of Health and Human Services in Nelson's suit pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Secretary's denial of Supplemental Security Income disability benefits under 42 U.S.C. §§ 1381–1383. Nelson argues that the Administrative Law Judge's finding that, despite his physical and mental impairments, he has the residual functional capacity (RFC) to perform a limited range of light work is not supported by substantial evidence, and that the ALJ failed to properly consider his mental impairments in finding him not disabled. Because we find that the Appeals Council erred in determining that certain evidence Nelson submitted to it was not material, we vacate the district court's grant of summary judgment and remand the case to the Secretary.

## I.

The evidence presented at the hearing before the ALJ indicates that Nelson suffers from a variety of physical and mental impairments. Since we base our decision to remand the case on the materiality of certain additional evidence Nelson submitted to the Appeals Council, we will not review the evidence presented to the ALJ in any great detail.

Briefly, Nelson was 44 years old at the time of the ALJ's decision. Although the record is somewhat unclear, he had apparently completed at least 10 years of school and had additional vocational training as a barber and cosmetologist. Nelson had worked in the past as a barber/cosmetologist and, most recently, as a stock boy in a food store.

Nelson, who is right-handed, lost (most) of the use of his right arm in 1983 due to complications caused by an intravenous drug injection. Some evidence before the ALJ also indicated that at the time of his application for benefits Nelson suffered from problems with his legs. Dr. Simeon Sevandal, who performed a consultative examination on Nelson, noted "browny induration and edema"[1] of the right foot and ⅓ of the right leg, indicating probable venostasis (abnormally slow motion of blood in the veins) of the right leg. In addition, Nelson himself testified that his legs swell and he suffers from poor circulation in his legs, and that, as a result, he could only stand for 25 minutes. On the other hand, Dr. Gary Farenbach, who also performed a consultative examination, noted no problems with Nelson's lower extremities. Ad-

ditionally, two Illinois state agency doctors, without examining Nelson, both completed reports indicating that he could stand or walk for 6 hours each day.

In addition to the evidence of Nelson's physical impairments, there was evidence that Nelson suffered from mental impairments of some consequence. Tests performed by Dr. George M. Gentry, a psychologist, indicated Nelson was borderline mentally retarded, with a full scale IQ of 71. His scores on the Trail Making Test and Hooper Visual Organization Test supported a finding of brain damage. Dr. Gentry concluded that Nelson could carry out only simple, short work cycle, repetitive tasks and that he would have to carry out even these tasks slowly because he would be using his non-dominant (left) hand. Dr. Adams, the medical advisor and a board-certified psychiatrist, stated that, based on his observations of Nelson at the hearing before the ALJ, he found support for Dr. Gentry's results suggesting brain damage. Dr. Adams nevertheless concluded that Nelson's mental impairments would not prevent him from performing unskilled work.

At the hearing before the ALJ there was also testimony that Nelson exhibited a personality disorder, a history of problems in living and emotional adjustment, heroin use over a long period and alcohol consumption. Nelson testified that at the time of the hearing he attended a methadone program and was not using heroin.

In a lengthy decision, the ALJ concluded (at step 5 of the sequential analysis[2]) that despite Nelson's impairments, he had the

---

**1.** An induration is an "abnormally hard spot or place." Dorland's Illustrated Medical Dictionary 673 (23rd Ed.1957). Edema is "the presence of abnormally large amounts of fluid in the intercellular tissue spaces of the body.... Edema may be localized, due to venous ... obstruction." The Sloane–Dorland Annotated Medical Legal Dictionary 238 (1987).

**2.** In *Bauzo v. Bowen,* we explained the five-step sequential analysis:

Social Security regulations prescribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the

claimant's impairment "severe"? (3) Does the impairment meet or exceed one of the list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled.

*Bauzo v. Bowen,* 803 F.2d 917, 920 n. 1 (7th Cir.1986); 20 C.F.R. § 404.1520.

RFC to perform a limited range of light and sedentary work and that there were a significant number of jobs in the economy that he could perform. The ALJ therefore found Nelson not disabled. In reaching this conclusion, the ALJ found Nelson's testimony regarding limitations on his ability to stand and walk incredible. Nelson requested review by the Appeals Council.

Before the Appeals Council Nelson submitted additional evidence, consisting of records of Nelson's admissions to Henrotin Hospital in 1981 and 1982 and a report from Dr. Jack Johns who treated Nelson at the Family Guidance Centers. The Henrotin Hospital records indicate that Nelson was hospitalized from September 5 to September 12, 1981 for treatment of multiple abscesses in both legs, that his condition improved, and that upon his release he was walking well. He was hospitalized again from October 1 to October 8, 1981 for treatment of abscesses in his legs and right arm. From February 19 to February 23, 1982, Nelson was again admitted for treatment of his right arm; at that time no problems concerning his legs were noted. Dr. John's report, dated April 11, 1986, opines, in relevant part, that Nelson could only sit for ½ hour, stand ¾ of an hour, and walk ½ hour during a workday. On July 23, 1986, Dr. Johns corrected his previous report by stating that Nelson had no restrictions on sitting, also noting that Nelson suffered from "chronic edema of both lower legs due to vascular insufficiency and damage."

The Appeals Council determined that this evidence provided no basis for changing the ALJ's decision, stating, "The medical records from 1981 and 1982 show that [Nelson was] treated for phlebitis [3] and multiple abscesses of [his] lower legs. This evidence is not material to a finding of disability based on [his] application of April 8, 1985. Dr. Johns opines that Nelson [is] ... limited in lifting no more than 15 pounds

and that [he has] ... no trouble sitting." The Appeals Council therefore denied Nelson's request for review and stated that the ALJ's decision "stands as the final decision of the Secretary."

Nelson then sought judicial review in the district court. The court granted summary judgment for the Secretary and denied Nelson's Rule 59(e) motion to alter or amend its judgment. This appeal followed.

Though we normally review the decision of the Appeals Council because it is the final decision of the Secretary, *see Bauzo*, 803 F.2d at 921, here, as the parties agreed at oral argument, the Appeals Council adopted the ALJ's decision as the final decision of the Secretary, making the additional finding that the new evidence submitted by Nelson was not material. We therefore review the ALJ's decision as well as the additional determination of the Appeals Council regarding the materiality of the new evidence.

II.

For a variety of reasons, this is a troubling case. Nelson obviously suffers from several impairments, both mental and physical, of varying degrees of severity. Some of these impairments, in particular his loss of the use of his right arm, are apparently due to his long history of drug abuse. We are concerned, given the overall tone of the ALJ's opinion, which at several points is derogatory of the claimant's "lifestyle," that this may have colored the ALJ's decision.

This court certainly does not condone excessive use of drugs or alcohol. Yet the regulations explicitly provide that the presence of "a condition diagnosed as addiction to alcohol or drugs ... will not, *by itself*, be a basis" for finding that an individual is or is not under a disability. *"As with any other medical condition,"* the determination as to disability in such instances shall be *"based on symptoms,*

3. Phlebitis is an "inflammation of a vein.... The disease is attended by edema, stiffness, and pain in the affected part." The Sloane–Dorland Annotated Medical–Legal Dictionary 548 (1987).

*signs, and laboratory findings."* 20 C.F.R. § 404.1525(e) (1988) (emphasis added). Thus, it seems clear that other medically determinable disabilities *caused* by drug addiction or alcoholism can qualify a claimant for benefits.[4]

Moreover, determinations as to eligibility for Social Security disability benefits are made pursuant to a comprehensive statutory and regulatory scheme which specifies the factors to be considered by the trier of fact. Nowhere in that scheme is the ALJ authorized to take into consideration the cause of a claimant's medically ascertainable disability. Certainly, a claimant suffering from a physical disability would not be precluded from receiving benefits simply because, for example, the disability resulted from an automobile accident when the claimant was not wearing a seatbelt or from a motorcycle accident when the claimant was not wearing a helmet. Stated more generally, neither the ALJ nor the court on review is authorized to pass judgment upon the source of a medically ascertainable disability.

We note, moreover, that, although the Supplemental Security Income provisions differ somewhat, the general Social Security statute and regulations set forth earnings requirements in order for a claimant to qualify for insured status. We therefore cannot agree with the ALJ's apparent hesitancy to grant Nelson benefits because of his admitted history of drug abuse and living as a "street person." An ALJ's role is to determine whether a claimant satisfies the medical and earnings requirements specified by the statute and regulations. Unauthorized consideration of the cause of the medically ascertainable disability is not the province of the ALJ.

### III.

That said, we focus only on the evidence of Nelson's disabilities, regardless of their cause. On appeal, Nelson makes several arguments for reversal of the ALJ's finding that he is not disabled. Because we find that the case must be remanded to the Appeals Council for consideration of Dr. John's report and the records of Nelson's admissions to Henrotin Hospital, we need not address the remainder of his arguments in any great detail.

The Appeals Council's determination that the additional evidence submitted by Nelson is not material is a legal determination and therefore subject to *de novo* review. *See Booz v. Secretary of Health and Human Services,* 734 F.2d 1378, 1380 (9th Cir.1984) (reviewing materiality of new evidence under § 405(g)). Our determination of the materiality of the evidence, as counsel for the Secretary suggested at oral argument, is informed by the materiality standard used in cases under § 405(g) of the Social Security Act, 42 U.S.C. § 301 *et seq.* New evidence is material for purposes of § 405(g) if there is a "reasonable possibility" that it would change the outcome. *Godsey v. Bowen,* 832 F.2d 443, 444 (7th Cir.1987).

The ALJ found that Nelson was capable of a limited range of light work. Nelson argues that, because of his inability to walk or stand the requisite periods of time, he is in fact limited to sedentary

---

4. Section 1382 of Title 42 of the United States Code does provide:

(e)(3)(A) No person who is an aged, blind, or disabled individual solely by reason of disability (as determined under section 1382c(a)(3) of this title) shall be an eligible individual ... for purposes of [Supplemental Security Income disability benefits] ... with respect to any month if such individual is medically determined to be a drug addict or an alcoholic unless such individual is undergoing any treatment that may be appropriate for his condition as a drug addict or alcoholic (as the case may be) at an institution or facility approved for purposes of this paragraph by the Secretary (so long as such treatment is available) and demonstrates that he is complying with the terms, conditions, and requirements of such treatment and with requirements imposed by the Secretary under subparagraph (B).

The Secretary does not argue that Nelson was precluded from receiving benefits by this provision. We note that Nelson testified that at the time of the hearing before the ALJ he was attending a methadone program and was not using heroin.

work.[5] Since, as the ALJ found, he does not have bilateral manual dexterity, Nelson argues further that he is entitled to a finding of disability under 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 201.00(h).[6] The regulation cited, while not *mandating* a finding of disability, does indicate that such a finding would be "appropriate." The question therefore is whether the new evidence is, as Nelson asserts, material to a finding that he cannot walk or stand for the periods required to qualify him as capable of light work. We believe it is.

As stated above, Dr. Johns' report, in relevant part, consists of an opinion that Nelson can stand only ¾ of an hour and walk only ½ hour during a workday. Moreover, the July 23, 1986 correction notes that Nelson suffes from "chronic edema" of both legs. In denying Nelson's petition for review, the Appeals Council failed to even consider these portions of Dr. Johns' report, instead mentioning only those portions which stated that Nelson had no restrictions on sitting and could lift 15 pounds. The Secretary now contends that Dr. Johns' report is contradicted by the report of Dr. Farenbach, who also examined Nelson. However, after reviewing Dr. Farenbach's report, we find that it is not clear that he focused to any great extent in his examination on possible prob-

lems with Nelson's legs.[7] Moreover, the ALJ did not discuss Dr. Farenbach's opinion in relation to Nelson's reported leg problems.

In addition, the Henrotin Hospital records indicate that Nelson was admitted on two occasions in 1981 for treatment of abscesses of his legs. The Appeals Council found those records immaterial to Nelson's disability at the time of his application for benefits in April of 1985. However, phlebitis and edema, which were also reported by Drs. Sevandal and Johns, are apparently conditions which come and go and may have been a problem in 1985 though they may not have been apparent when Dr. Farenbach examined Nelson. Though we express no opinion as to the weight to be given the Henrotin Hospital records, they are at least relevant to the condition of Nelson's legs at the time of his application and lend support to Nelson's and Dr. Johns' more recent reports of Nelson's inability to walk or stand for long periods.

Thus, contrary to the opinion of the Appeals Council, we conclude that the Henrotin Hospital records and Dr. Johns' report are material to the issue of Nelson's ability to walk or stand. Given the paucity of the evidence before the ALJ relevant to this issue and the lack of evidence clearly con-

---

**5.** The Social Security regulations define "light work" as follows:

> *Light Work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing,* or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (emphasis added).

"Sedentary work" is defined:

> *Sedentary Work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary* in carrying out job duties. *Jobs are sedentary if walking and standing are required occasionally* and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (emphasis added).

**6.** The regulation states, as an example:

> An individual ... is restricted to unskilled sedentary jobs.... A permanent injury of the right hand limits the individual to sedentary jobs which do not require bilateral manual dexterity. None of the rules in Appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary. Since the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i.e., sedentary), a finding of disability would be appropriate.

20 C.F.R. Part 404, Subpart P, Appendix 2, Section 201.00(h).

**7.** Regarding Nelson's legs, Dr. Farenbach's report stated only: "There was no stasis dermatitis, varicosities, ulcers, or pitting edema. There was full range of motion of all joints of the lower extremities."

tradicting the additional evidence offered by Nelson before the Appeals Council, that evidence, if considered by the ALJ, might reasonably have affected his determination that Nelson could stand and walk for the periods required for a finding he was capable of light work.

Because we are remanding the case to the Secretary we need not discuss Nelson's other contentions in detail. However, we do note, in regard to one other issue raised by Nelson, that the record raises concerns regarding the ALJ's consideration of the combined effects of Nelson's various mental and physical impairments. The ALJ explicitly stated that "[t]he evidence does not show any medically determinable impairments which, *singly or combined,* preclude claimant from engaging in substantial gainful activity." (Emphasis added.) Thus, the ALJ apparently *did* consider the combined effects of Nelson's impairments. The question remains, however, whether his determination that Nelson's combined impairments did not prevent him from engaging in substantial gainful activity is supported by substantial evidence.

Nelson argues that because the ALJ limited his questioning of the vocational expert, Dr. Hamersma, to a consideration of the effects of Nelson's *physical.* impairments, and limited his questioning of Dr. Adams, the medical advisor and board-certified psychiatrist, to his *mental* impairments, their testimony cannot constitute substantial evidence of the *combined* effects of Nelson's impairments. Nelson thus claims that the report of Dr. Gentry, who considered both his mental and physical impairments, is the only evidence of those combined effects. As the Secretary argues, Dr. Gentry is a psychologist not a medical doctor, and his report itself recognizes that Nelson's physical impairments should be evaluated by someone else. The Secretary also argues that it was proper for the ALJ to elicit testimony from the

vocational expert regarding jobs that Nelson could do given his physical impairments,[8] then question the medical advisor, a psychiatrist, only regarding Nelson's mental impairments. He therefore contends that it was proper for the ALJ to rely on the medical advisor's conclusion that the mental impairments would not prevent Nelson from performing unskilled work, including jobs referred to by the vocational expert as within Nelson's physical abilities. Given our decision to remand the case, we need not and do not hold that the ALJ's findings regarding the combination of Nelson's mental and physical impairments are not supported by substantial evidence. We do note, however, that the ALJ could perhaps have done a better job of developing the record in this regard, and suggest that further consideration should be given to the combined effects of Nelson's impairments when the additional material evidence is considered.

### IV.

Because we find that the Appeals Council erred in determining that the additional evidence Nelson submitted to it was not material, we vacate the district court's grant of summary judgment and remand the case to the Appeals Council. The Appeals Council shall then either make a decision on the case in accordance with the Secretary's regulations or remand the case to the ALJ for a recommended decision. *See* 20 C.F.R. § 416.1483. In either case, the Appeals Council or ALJ must reconsider, in light of the additional evidence, the ALJ's determination that Nelson is capable of light work. If it is determined that Nelson is capable of only sedentary work, it must then be determined, given 20 C.F.R. Part 404, Subpart P, Appendix Z, Section 201.00(h), as well as the combined effects of Nelson's mental and physical impairments, whether Nelson is disabled.

Vacated and Remanded.

---

**8.** In addition, the Secretary notes that, though given the opportunity, Nelson's representative at the hearing declined to question the vocational expert regarding Nelson's mental impairments.