**Thomas NAYDIHOR SSN: 398–20–6360, Plaintiff,**

**v.**

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 89–C–0063.**

United States District Court, E.D. Wisconsin.

Aug. 2, 1990.

**632**

Lisa Clay Foley, Legal Action of Wisconsin, Inc., Milwaukee, Wis., for plaintiff.

John E. Fryatt and Donna Morros, U.S. Attys. by Stephen J. Liccione, Asst. U.S. Atty., Milwaukee, Wis., Weinstein, Chief Counsel, Reg. V, Donna Calvert, Asst. Reg. Counsel, DH & HS, Chicago, Ill., for defendant.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### BACKGROUND

Plaintiff Thomas Naydihor ("Naydihor") has appealed from a decision of the Secretary of Health and Human Services ("the Secretary") denying his application for disability insurance benefits under the Social Security Act ("the Act"), 42 U.S.C. § 405(g). The parties filed cross-motions for summary judgment, and the case was referred to a United States Magistrate pursuant to Title 28 U.S.C. § 636(b)(1)(B) & (C) and Local Rule 13.03(a)(4) for his recommendation.

Naydihor's motion for summary judgment requests this court to either reverse the Secretary's decision that he is not disabled or to remand his claim to the Secretary for reconsideration. The Secretary opposed Naydihor's motion and requested this court to grant summary judgment in his favor affirming the Administrative Law Judge's ("ALJ") August 8, 1988 decision that Naydihor is not disabled.

The magistrate reviewed Naydihor's and the Secretary's briefs in support of their cross-motions for summary judgment and on September 22, 1989, recommended that this court grant the Secretary's motion for summary judgment of affirmance. In addition, the magistrate informed the parties that, pursuant to 28 U.S.C. § 636(b)(1)(B) & (C) and Local Rule 13.03, they had ten (10) days to file objections to his recommendation. On October 2, 1989, Naydihor objected to the magistrate's recommendation, and on October 16, 1989, the Secretary filed a brief in opposition to Naydihor's objections. This court has reviewed the file and numerous briefs filed by the parties and does not adopt the magistrate's recommendation, but instead remands the case to the Secretary for further consideration.

### FACTS

Naydihor is a right-handed, 5'10" tall bachelor who weighed 310 pounds and was sixty (60) years old at the time of his administrative hearing (May 16, 1988 Hear. Tr. at 3–4). He has a tenth-grade education, a general high school equivalency diploma, and used to work as a maintenance and construction electrician with American Motors and Chrysler Corporation in Kenosha, Wisconsin (*Id.* at 4–5). He ceased work on June 10, 1987, because of a ganglion cyst (a sac of fluid attached to a tendon sheath) on his left wrist which caused his entire hand to swell and prevented him from lifting (*Id.*). He had surgery on his wrist on June 16, 1987, but he still claims to experience swelling in the wrist (*Id.* at 7–8; Feb. 21, 1989 Case Record at 96). The pain in the left wrist, however, is not why Naydihor claims he cannot work.

Naydihor claims that he currently is unable to work because of an injury to his left knee and a variety of other physical impairments, and his doctor claims Naydihor is unable to work because of a back injury (Feb. 21, 1989 Case Record at 112–15). He tore ligaments in his left knee on September 11, 1987, and an operation was per-

formed on his knee on January 6, 1988 (*Id.* at 112). In regard to the condition of Naydihor's left wrist and knee, the ALJ found that:

> By January 1988 he was full weight bearing and there was no evidence of swelling. He apparently had good results from both surgeries. Accordingly, the undersigned finds that the claimant has musculoskeletal impairments involving his left wrist and knee which have imposed limitations upon his ability to stand or walk more than six hours of a normal workday or lift in excess of 20 pounds.

(Aug. 8, 1988 ALJ Dec. at 3–4). Naydihor, however, testified that: his left knee continues to swell and ache; his left leg is bigger than his right; both his legs become numb after he walks more than three (3) city blocks; he cannot stand in one place for more than one and one-half hours; he might be able to stand for three (3) hours spread out over an eight (8) hour period; he has trouble getting up from the toilet or a stool; and his legs are unable to support him because of his weight (May 16, 1988 Hear. Tr. at 9–10, 14–15, 19). In addition, Naydihor's doctor, Dr. A. Patel, prepared a medical report, which the ALJ did not see or consider in making his determination, which stated that:

> This patient was treated by me for a painful knee and he has made satisfactory recovery but his osteoarthritis of the knee will prevent him from returning to the type of work at Chrysler. More important, this patient's ankylosing spondylitis [stiffening inflammation of spinal vertebrae] is quite a serious condition and I do not believe that he will be able to return to work.

(Jul. 8, 1988 Patel Rept. at 2).

Other than Naydihor's left knee and inflammation of his spinal vertebrae, he also claims that he is obese, has hypertension, a difficult time breathing, and is depressed. The ALJ found: that Naydihor's obesity did not prevent him from working; that the record indicated his hypertension was well controlled; that he did not have any respiratory difficulty; and that he did not have a medically determinable mental impairment (Aug. 8, 1988 ALJ Dec. at 4).[1] The ALJ also found that Naydihor's testimony regarding pain was credible to the extent it precluded him from doing light work and concluded that he did not have an impairment or combination of impairments which would classify him as disabled (Aug. 8, 1988 ALJ Dec. at 4–5).

The vocational expert who testified at Naydihor's hearing, Lawrence Blum, Ph.D. ("Blum"), stated that there were a variety of light and sedentary level jobs near Naydihor's residence which matched his skills (May 16, 1988 Hear. Tr. at 23–26). Specifically, Blum testified that he believed there were 500 inspector, 200 testing, and 400 bench assembly jobs which Naydihor's skills were transferrable to in the Racine, Wisconsin area (*Id.* at 25–26).[2] In addition, Blum testified that if the region were expanded to include the Milwaukee area, there would be an additional 4,000 inspector, 1,800 testing, and 3,000 electrical assembly jobs (*Id.* at 27). Finally, Blum testified that the number of jobs would be reduced by twenty-five percent (25%) if one assumed that Naydihor could stand for a

---

**1.** This court notes that although the ALJ found Naydihor had no difficulty breathing, Dr. Patel's report, which the ALJ did not have, identifies Naydihor as having difficulty breathing (Jul. 7, 1988 Patel Rep. at 1).

**2.** This court notes that in the ALJ's decision he states that:

> His [Naydihor's] skills are transferable to the following jobs in his local area: 5,000 light inspector; 200 tester; 400 bench assembler of electrical components.

(Aug. 8, 1988 ALJ Dec. at 4). The transcript of the hearing, however, indicates that Dr. Blum testified that there were only 500, not 5,000,

light inspector jobs (May 16, 1988 Tr. at 25). This discrepancy is important because the ALJ was required to, and did, make a finding that Naydihor's skills were highly marketable. The ALJ based this finding on the fact that there were a significant number of jobs to which Naydihor's skills were transferrable (*Id.* at 5). If the transcript is correct and the ALJ incorrectly considered 5,000 light inspector jobs, rather than 500, then his finding as to the marketability of Naydihor's skills may have been different because the number of jobs near Naydihor's residence would be reduced by eighty percent (80%).

total of only three (3) hours during the work day and that he had no limitations on his sitting (*Id.* at 28).

On August 8, 1988, the ALJ signed a decision which concluded that Naydihor was not entitled to "a period of disability or to disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act." (Aug. 8, 1988 ALJ Dec. at 6). On August 12, 1988, Naydihor requested the Social Security Administration's Appeals Council to review his claim (Feb. 21, 1989 Case Record at 114–15). Naydihor claimed that a new review of his claim was appropriate because the ALJ did not have Dr. Patel's medical report which documented his breathing and back problems (*Id.* at 112–13). On November 22, 1988, the Appeals Council denied Naydihor's request for review on the grounds that "[t]he information in Dr. Patel's report is essentially the same as that contained in other evidence already of record." (Nov. 22, 1988 Appeals Council Letter at 1). On January 13, 1989, Naydihor commenced this action in this court.

## ANALYSIS

### I. Standard of Review

■ The Seventh Circuit has set forth the standard which a district court must use when reviewing the Secretary's findings as to whether or not an individual is disabled:

> The Act itself gives us the standard of review to be applied in this case: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The ALJ's finding that Stuckey (claimant) was not disabled must be upheld if it is supported by substantial evidence on the record. We will not reweigh the evidence presented at the administrative hearing, and we will not determine whether Stuckey was actually disabled. Absent an error of law by the Secretary, we must affirm if substantial evidence is present.

*Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir.1989) (citations omitted). In addition, the United States Supreme Court has held that the statutory standard for "substantial evidence" in a reviewing a decision made by the Secretary under the Act is:

> "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. Nat'l Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *see also Schmoll v. Harris,* 636 F.2d 1146, 1150 (7th Cir.1980).

Thus, this court must affirm the ALJ's decision regarding Naydihor not being disabled as long as there is substantial evidence which adequately supports this conclusion.

### II. Test for Disability

The magistrate correctly noted that there is a five-step test for determining if a claimant is disabled which the Seventh Circuit has enunciated as follows:

> Social Security regulations prescribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of the list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops [the] inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen,* 855 F.2d 503, 504 n. 2 (7th Cir.1988) (quoting *Bauzo v. Bowen,* 803 F.2d 917, 920 n. 1 (7th Cir.1986) and referring to 20 C.F.R. § 404.1520).

In the present case, the ALJ found that Naydihor was unemployed and that his impairment was severe (Aug. 8, 1988 ALJ

Dec. at 5). The ALJ, however, found that Naydihor's impairment did not meet or exceed one of the listings of specific impairments (*Id.*). Finally, the ALJ determined that although Naydihor was unable to perform his former job, his skills were highly marketable permitting him to perform other work within the economy (*Id.*). Thus, the ALJ concluded that Naydihor was not disabled as defined by the Act (*Id.*).

Naydihor has objected to the ALJ findings and the magistrate's recommendation affirming these findings on essentially two separate grounds: (1) the ALJ breached his duty to question Naydihor thoroughly, regarding the extent of his depression and physical pain; and (2) the ALJ's finding that Naydihor's impairments do not meet or equal any impairment in the "Listing of Impairments," and his finding that Naydihor's skills are highly marketable, are not supported by substantial evidence.

A.  Administrative Law Judge's Duty to Develop a Thorough Record

■ The Seventh Circuit has held that Administrative proceedings are not adversary hearings, and that the ALJ has an affirmative duty to thoroughly develop the record:

> It is firmly established that hearings to determine whether claimants are entitled to disability insurance benefits are not adversary proceedings. The ALJ has a basic obligation at such hearings to develop a full and fair record. Especially where the claimant is unassisted by counsel, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts...." His failure to do so has been consistently held to constitute good cause sufficient to remand to the Secretary under 42 U.S.C. § 405(g) for the taking of additional evidence.

*Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir.1981) (citations omitted) (quoting *Gold v. Sec'y of Health, Ed. and Welfare*, 463 F.2d 38, 43 (2d Cir.1972). In the present case, Naydihor argues that the ALJ breached his duty to develop the record regarding Naydihor's depression and the

physical limitations caused by the pain he was experiencing. Specifically, Naydihor claims that the ALJ should have asked him more questions to determine the severity of his depression and his pain. This court agrees.

The issue of Naydihor's depression arose after the ALJ asked Naydihor if he had any other mental or physical conditions the ALJ should know about. Naydihor told the ALJ about his depression and the following exchange between the two took place:

Q:  You say you're coming out of the depression now?

A:  Yes, I'm coming out of the depression more-or-less because I—but there is still something wrong with me, I just—I just can't seem to—to navigate like. I mean, I'm not a lazy man, you can look at my—my fee and finances and what—how much money I made in total, you'd see how I work, if I could I put a lot of overtime and everything. And I—I—I don't know what's the matter with me.

(May 16, 1988 Hear. Tr. at 12). The ALJ then asked Naydihor if his doctor had referred him to counseling or psychotherapy or if he was put on medication. After Naydihor responded negatively to both questions, the ALJ did not ask any further questions about the extent or nature of Naydihor's depression.

The magistrate determined that the ALJ failed to develop the record as to Naydihor's depression, but concluded that this development was not required because the depression (1) was not documented by the medical record, (2) did not prevent Naydihor from working when it initially began, and (3) Naydihor testified that his condition was improving (Sep. 22, 1989 Mag. Rec. at 11–12). This court disagrees with the magistrate's conclusion that the development of the record was not required. Once Naydihor told the ALJ that he was depressed, the ALJ, at a minimum, was required to ask Naydihor if he had spoken to his doctor about this problem. Although Naydihor stated that his doctor never referred him to counseling or prescribed drugs for the depression, Naydihor was never directly asked or stated that his doctor was aware

of the problem. In addition, although Naydihor testified that he was more or less coming out of the problem, he stated that there was still something wrong with him.

Although Naydihor's testimony as to his depression was insufficient to support a finding of disability solely on the basis of a mental impairment, it was sufficient to warrant further inquiry by the ALJ because it may have altered the ALJ's finding that Naydihor did not "have an impairment or combination of impairments which meets or equals the requirements of the Listing of Impairments." (August 8, 1988 ALJ Dec. at 5). Naydihor's depression may convince the ALJ that Naydihor has a combination of impairments which meet or equal the impairment requirements for obesity.

The nature and extent of Naydihor's depression is important because Naydihor just missed being classified as disabled due to his weight at the time of the administrative hearing. If Naydihor had been one (1) inch shorter or eight (8) pounds heavier, then he would have been disabled due to obesity pursuant to 20 C.F.R. Part 404, Subpt. P, App. 1 § 10.10.[3]

The magistrate has correctly stated that in order for an ALJ to determine that Naydihor's combination of impairments equaled the listed impairment of obesity he would have had to find that Naydihor's impairments were "medically equal" to obesity. 20 C.F.R. § 416.926. In addition, the Social Security Administration regulations state that:

> We will always base our decision about whether your impairment(s) is medically

equal to a listed impairment on medical evidence only. Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques. We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Secretary in deciding medical equivalence.

20 C.F.R. § 416.926(b). This regulation at first glance would appear to prohibit the ALJ from considering Naydihor's depression in determining equivalency because there is no medical evidence of his depression in the record. This reasoning, however, ignores the possibility that Naydihor may have never told his doctors about his depression or that his depression has become more severe since he last saw his doctor. Without inquiring into the nature and severity of the depression and the specific remedies Naydihor has sought for the depression, there is no way to ascertain why there is no medical evidence of the depression. This uncertainty renders the nonexistence of medical evidence of Naydihor's depression meaningless as to whether or not his depression would be a factor for determining if his impairments equaled the listed impairment of obesity.

■ More importantly, Naydihor has argued that his depression is not the only impairment which the ALJ needed to consider when determining equivalency. Naydihor correctly points out that in addition to his weight problem, there is medical evidence that he has impairments involving his blood pressure, his left knee, his spine,

---

**3.** This court notes that the magistrate correctly noted in his recommendation that § 10.10 requires the plaintiff to meet or exceed a given height-weight table *and* exhibit any one (1) of five (5) secondary conditions. Naydihor is 70″ tall and claimed he weighed 310 pounds at the time of his ALJ hearing. The table in the regulations, however, required a weight of 318 pounds for a 70″ tall male or 310 pounds for a 69″ tall male. Thus, Naydihor missed the first test by either eight (8) pounds or one (1) inch.

The magistrate, however, went on to state that Naydihor did not have any of the five (5) secondary impairments. This court disagrees. Section 10.10(A) states:

> History of pain and limitation of motion in any weight bearing joint or spine (on physical

examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine; The magistrate concluded that "although the record contains some x-ray evidence of arthritis in the plaintiff's left knee, ... there is no indication of limitation of motion." (Sep. 22, 1989 Rec. at 14). A review of the record, however, indicates that Naydihor had a history of pain in his left knee (May 16, 1988 Tr. at 9), and that his doctor, A. Patel, M.D., in a medical report prepared after the ALJ decision, wrote that Naydihor had "limitation of motion in left knee." (Jul. 8, 1988 Patel Rept. at 1). In addition, there was x-ray evidence of Naydihor having problems associated with arthritis in his left knee (Feb. 21, 1989 ALJ Records at 89–97). Thus, the requirements of § 10.10(A) are fulfilled.

and his breathing (Feb. 21, 1989 Case Record at 109–10, 112–13). In fact, the most comprehensive evidence of Naydihor's spine and breathing impairments are contained in the July 8, 1988 medical report prepared by Dr. A. Patel which the ALJ did not have when considering whether or not Naydihor was disabled.

This court notes that Naydihor's appeal of the ALJ decision to the Social Security Administration Appeals Council was based on the fact that the ALJ did not have Dr. Patel's report. In denying Naydihor's request for review, the Appeals Council stated that "[t]he information in Dr. Patel's report is essentially the same as that contained in other evidence already of record." (Nov. 22, 1988 Action of Appeals Council on Request for Review). This court, however, was unable to locate any other doctor report which stated that Naydihor had spinal or breathing problems. In fact, as noted earlier, Dr. Patel's July 8, 1988 report stated:

> This patient was treated by me for a painful knee and he has made satisfactory recovery but his osteoarthritis of the knee will prevent him from returning to the type of work at Chrysler. More important, this patient's ankylosing spondylitis [spine problem] is quite a serious condition and I do not believe that he will be able to return to work.

(Jul. 8, 1988 Patel Rept. at 2). The fact that the ALJ did not have this report when making its determination, combined with the ALJ's failure to ascertain the extent of Naydihor's depression, renders questionable the ALJ's finding that Naydihor's combination of impairments were not equal to obesity.

The magistrate also states that two (2) physicians filled out and signed Form SSA–831–U5 stating that Naydihor's condition was not equal to any listing of a disability which is proof that his combined impairments are not equal in severity to obesity (Sep. 22, 1989 Mag. Rec. at 15; see Feb. 21, 1989 Case Record at 55, 60). There is no evidence, however, that the physicians who completed this form had any knowledge of Naydihor's depression. In addition, both of these reports were completed prior to Dr. Patel's report which indicated that Naydihor was still having problems with his left knee, in addition to back and breathing problems. In other words, the ALJ's finding can not rely on the forms these doctors filled out because the doctors were not aware of Naydihor's depression or the severity of his other impairments when they completed the forms.

■ Naydihor also argues that the ALJ breached his duty to develop the entire record as to the severity of Naydihor's pain and the type of activities he was capable of performing. Specifically, Naydihor claims that the ALJ made a finding that there were no limitations on his ability to sit, even though the ALJ never thoroughly investigated the pain Naydihor experienced from sitting. Although this court agrees with Naydihor, it notes that the ALJ's failure to delve into the extent of Naydihor's pain may have been a result of the ALJ not having Dr. Patel's report. Dr. Patel's report is medical evidence of Naydihor's back pain and breathing problems and has greatly enhanced this court's inquisitiveness as to Naydihor's ability to sit, or to alternate sitting and standing, for long periods of time.

The ALJ did question Naydihor on whether or not he had difficulties sitting:

Q: Do you have any difficulties sitting?
A: Sitting?
Q: Yes.
A: Not that so I can stretch my legs or move I have a little bit of problems. If I'm, you know, compelled to stay in one place I have to switch around.
Q: Can you bend over at the waist?
A: I can bend over but I—I can't kneel down, and when I try to get up when I kneel down I got to have my hands to help me. I have a problem with—on a low stool or the toilet, when I get down there or something lower I have problems to get up. I don't know, sometimes I have to have—hit the wall to get up.

(May 16, 1988 Hear. Tr. at 14–15). The ALJ, however, did not ask Naydihor any further questions concerning the pain he experienced when sitting or what limita-

tions on sitting Naydihor had. The record does not indicate how long Naydihor could sit in one place, nor the extent of pain Naydihor experienced when sitting. In fact, Naydihor's statement that he has problems getting up from the toilet raises numerous questions regarding his ability to work in a job where he has to repeatedly sit down and stand up.

The problem with this lack of inquiry is that the ALJ asked a hypothetical question to the vocational expert, Blum, to determine whether or not Naydihor's skills were highly marketable in light of his physical limitations, and in this question the ALJ assumed that there were no limitations on Naydihor's ability to sit: [4]

Q: So, I guess the question I was trying to ask is if we assume his testimony to be true [regarding Naydihor's inability to stand more than three hours for the entire day] would that rule out any of those jobs?

A: Yes, it seems to me that if he did have this hard and fast limitation on the ability to—to stand and sit, you said sit/stand three hours, didn't you?

Q: No, he said he could be on his feet a total of three hours.

A: Three hours.

Q: But no limitation in sitting except that he needs to move around occasionally. So, we're assuming that he can get through an eight hour day walking and sitting, standing. But the total time he could be on his feet, according to his testimony, was three hours out of eight. I know some of the jobs you said were sit/stand, so I assume if he could sit or stand that that would not rule out of those jobs. But I thought it might rule out some of the light jobs, which would require more prolonged walking and standing.

A: Yeah, I was thinking along the same lines. That it would be my opinion that

some of them [jobs] would be ruled out, and again maybe a reduction 25 percent because of the limitation on being on his feet.

(May 16, 1988 Hear. Tr. at 28). The vocational expert then went on to conclude that based on the then current unemployment rate in southeastern Wisconsin, a person with Naydihor's skills and standing limitations was employable and marketable (*Id.*). The expert, however, never stated that Naydihor was highly marketable, and his opinion on general marketability may have been different had he been aware that there were limitations on Naydihor's ability to sit or to alternate standing and sitting. Thus, the ALJ's failure to ascertain Naydihor's limitations on sitting, and sitting and standing, is important and requires this court to remand.

**B. Substantial Evidence Supporting the Secretary's Findings**

Naydihor has argued that the ALJ's finding (1) that his impairments did not meet or equal the Listing of Impairments for obesity and (2) that his skills are highly marketable are not supported by substantial evidence. This court already has discussed in length why the ALJ's failure to develop the record regarding Naydihor's depression and ability to alternate sitting and standing require this court to remand Naydihor's claim to the Secretary for the purpose of conducting a new administrative hearing. One of the critical reasons why the ALJ's failure to develop the record fully requires remand, is that this failure prevented this court from determining whether or not there is substantial evidence to support the ALJ's findings that Naydihor's impairments are not equal to obesity or that his skills are highly marketable. In addition, this incompleteness prevents this court from finding, de novo, that Naydihor is disabled.

---

**4.** Section 404.1563(d) of the Social Security Administration regulations required the ALJ and Secretary to find that Naydihor's skills were highly marketable in order to classify him as not disabled. This section states:

If you are close to retirement age (60–64) and have a severe impairment, we will not consid-

er you able to adjust to sedentary or light work unless you have skills which are highly marketable.

and is controlling because Naydihor was sixty (60) years old at the time of the hearing and the ALJ found that he had a severe impairment (Aug. 8, 1988 ALJ Dec. at 3, 5).

IT IS THEREFORE ORDERED that the United States Magistrate's recommendation of September 22, 1989 is NOT ADOPTED as the decision of this court.

IT IS FURTHER ORDERED that the Secretary of Health and Human Services' motion for summary judgment affirming the Administrative Law Judge's decision that Thomas Naydihor is not entitled to benefits is DENIED.

IT IS FURTHER ORDERED that Thomas Naydihor's motion for summary judgment reversing the Secretary of Health and Human Services' decision that he is not entitled to disability insurance benefits is DENIED.

IT IS FURTHER ORDERED that Thomas Naydihor's motion for summary judgment remanding his case to the Secretary of Health and Human Services for a new administrative hearing is GRANTED and this case is REMANDED to the Secretary for the purpose of conducting a new administrative hearing consistent with this decision.