**Edward NELSON, Plaintiff,**

**v.**

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

**No. 86 C 9219.**

United States District Court, N.D. Illinois, E.D.

Oct. 4, 1991.

---

Carl Flaningam, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiff.

Ernest Ling, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This case (originally assigned to the calendar of this Court's then colleague, Honorable George Leighton) was first brought before this Court when counsel for plaintiff Edward Nelson ("Nelson") applied for an award of attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[1] This Court's August 13, 1991 opinion found that the merits of the issues posed by the parties in that respect could not be dealt with because of the absence of a necessary precondition: the existence of a final judgment in Nelson's favor. In accordance with this Court's direction, Secretary of Health and Human Services Louis Sullivan ("Secretary") has since applied for, and this Court has entered, the necessary final judgment in Nelson's favor based upon Secretary's decision awarding benefits to Nelson.

At this point the EAJA issues are ripe for determination. Secretary does not quarrel with Nelson's potential entitlement to EAJA coverage—he was clearly a "prevailing party" and has less than $2 million in net worth—but instead argues that:

1. Secretary's position was "substantially justified," which if true would defeat Nelson's claim entirely.

2. As a second line of defense, the fees request is excessive in amount.

This opinion treats those issues in turn.

### Substantial Justification

*Pierce v. Underwood*, 487 U.S. 552, 565–66, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (citations omitted) defines the "substantially justified" defense under Section 2412(d)(1)(A) in these terms:

---

1. Further citations to EAJA will take the form "Section—" and will employ the numbering in Title 28 rather than EAJA's internal section numbering.

We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. To be "substantially justified" means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve.

Thus EAJA does not enact an automatic fee-shifting regime, which would come into play whenever Secretary (or any governmental agency) had lost on the merits.

In this instance Secretary advances two levels of asserted "substantial justification" for the legal position that was advanced by his predecessor Otis Bowen but was rejected by Judge Leighton and then by our Court of Appeals (*Nelson v. Bowen*, 855 F.2d 503 (7th Cir.1988)). Neither is persuasive.

█ For one thing, Secretary argues that there was substantial justification for the government's contention that the determination of Secretary's Appeals Council was subject to review only under a "substantial evidence" standard, rather than de novo as our Court of Appeals held (855 F.2d at 506). But that is simply wrong: What the Court of Appeals applied was the well-established rule that a purely *legal* question—whether or not Nelson's additional evidence was material—is for the court to decide as an original matter. For that proposition *Nelson, id.* cited not only the Ninth Circuit's decision in *Booz v. Secretary*, 734 F.2d 1378, 1380 (9th Cir.1984) but our Court of Appeals' own earlier decision in *Godsey v. Bowen*, 832 F.2d 443, 444

(7th Cir.1987). No contention to the contrary can be viewed as "reasonable" in *Pierce* terms (and hence as "substantially justified" for EAJA purposes).

Secretary's other contention fares no better. Essentially he seeks to convert the Court of Appeals decision into one of weighing evidence, as to which he urges that the view of the Administrative Law Judge ("ALJ"), which became Secretary's own, was reasonable. That however mischaracterizes the issue. What the Court of Appeals did *not* do was to make a factual determination—instead it looked at the other evidence before the ALJ to determine the question of materiality or nonmateriality of the additional evidence Nelson had later submitted to the Appeals Council (855 F.2d at 507–08):

> Thus, contrary to the opinion of the Appeals Council, we conclude that the Henrotin Hospital records and Dr. Johns' report are material to the issue of Nelson's ability to walk or stand. Given the paucity of the evidence before the ALJ relevant to this issue and the lack of evidence clearly contradicting the additional evidence offered by Nelson before the Appeals Council, that evidence, if considered by the ALJ, might reasonably have affected his determination that Nelson could stand and walk for the periods required for a finding he was capable of light work.

Here too the questions of relevance and, under the circumstances, of materiality were not subject to serious dispute, and Secretary's contrary position did not have substantial justification.

### Amount Claimed

█ Secretary also challenges the reasonableness of the requested fee of $14,126.80 (which should be $.40 less) subject to supplementation for post-application services. Secretary's quarrel is not with the $109 hourly rate[2] but only with the number of hours spent by the lawyers. That objection is also rejected.

**2.** That rate reflects the statutory $75 rate increased by changes in the cost of living as taken from the Consumer Price Index.

Lead counsel Robert Grossinger spent 96.7 out of the requested total of 129.6 hours, and Secretary does not object to that portion at all. Instead his contention is that the services rendered by fellow lawyers Mary Elizabeth Kopko and Carl Flaningam were duplicative to some extent.

This Court has consistently sought to eliminate from its fee awards any overbilling that may be the product of a multiplicity of lawyers working on the same case (see, e.g., its opinion in *Roe v. City of Chicago*, 586 F.Supp. 513 (N.D.Ill.1984), which has since been cited for the same proposition by our Court of Appeals in *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir.1989) [3]). But in this instance Ms. Kopko's Affidavit ¶ 4 says (and this Court has no reason to doubt) that her particularized statement "excludes a number of hours spent discussing the litigation with co-counsel, performing clerical tasks which most attorneys are not required to perform (e.g.) serving motions and briefs on opposing counsel, photocopying, etc., and other hours which might be found cumulative or excessive."

■ Whenever an appeal is involved, the prudent lawyer is well advised to prepare for oral argument by having another lawyer familiar with the case play the role of a badgering appellate judge—if only to make sure that every tough question has been anticipated. That kind of cooperative participation appears to account for part of Ms. Kopko's time, though the bulk of her statement reflects independent activity on her part. Nothing in the fee application by her or by Mr. Flaningam suggests that either has included any non-constructive services in her or his request.[4] In sum, the application for fees is approved in its entirety.

### Conclusion

Secretary's position on the merits of this case (and indeed on the current motion) lacked substantial justification, the standard prescribed by Section 2412(d)(1)(A). Accordingly Secretary is ordered to pay attorneys' fees to Nelson and his counsel (jointly and severally) in the amount of $14,126.40. This order is without prejudice to a later motion by Nelson's counsel to supplement that amount for services rendered after those covered in the present fee application.

---

**3.** Earlier this year this Court similarly commented in the course of cutting back a fee request in *CFTC v. Stotler Funds, Inc.*, No. 90 C 4387, slip op. at 5 n. 6, 1991 WL 93269 (N.D.Ill. May 22, 1991), referring to the statement in the text that "this Court has been left with the sense that there has indeed been some overstaffing and too much play in the overall joints in the handling of the case":

> In some respects that seems to be an inevitable byproduct of the handling of matters by a large law firm. Instead of the firm's attaining the desired economies of scale through appropriate delegation downward, what frequently result are the diseconomies that are

generated by multilawyer court appearances and conferences and the need to keep several other lawyers up to speed on what the individual lawyer has done. In complex matters, the adoption of a team approach frequently represents the only realistic choice. But it would be shortsighted to fail to recognize that there are some real costs that are often paid for that choice.

**4.** Secretary complains that Ms. Kopko chose to attend the oral argument before the Court of Appeals, though the argument was handled by Mr. Grossinger—thus adding 0.4 hours ($40.36) to the application. De minimis non curat lex.