Virginia YOUSIF, Plaintiff,

v.

Shirley A. CHATER, Commissioner of Social Security, Defendant.

No. 95 C 1152.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 10, 1995.

Barry Alan Schultz, Schultz & Winick, Chicago, IL, for plaintiff.

Tony J. Masciopinto, United States Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Virginia Yousif ("Yousif") appeals the final decision of Commissioner of Social Security Shirley Chater ("Commissioner") to terminate Yousif's disability insurance benefits under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423.[1] As is usual in these cases, Yousif and Commissioner have filed cross-motions for summary judgment under Fed.R.Civ.P. ("Rule") 56, with Yousif alternatively requesting a remand for a new hearing. For the reasons stated in this memorandum opinion and order, Yousif's motion for summary judgment is granted (thus mooting her alternative request), and Commissioner's is of course denied.

1. Further citations to the Act's provisions will take the form "Section —," using the Title 42 numbering rather than the Act's internal numbering. Pertinent regulations from 20 C.F.R. are cited "Reg. § —." Citations to the administrative record will take the form "R. —."

*Background*

From 1979 through early 1992 Yousif performed unskilled light work as a bindery machine operator at Commerce Clearing House (R. 18). Her job entailed removing books from a machine and placing them on a skid or cage truck, and sometimes feeding unbound books into a machine (R. 100), all of those activities requiring the constant use of both hands (R. 55). Because of a job-sustained injury to her right elbow, Yousif claims that she became unable to work on January 14, 1992 (R. 38).

On December 23, 1992 Yousif filed a claim for disability benefits (R. 96–103). Her application was denied initially (R. 73–75) and on reconsideration (R. 80–82). Next Yousif sought a hearing, which took place before Administrative Law Judge ("ALJ") Allyn Brooks on November 4, 1993 (R. 34). Both Yousif and Vocational Expert Frank Mendrick ("Mendrick") testified at the hearing. Also before the ALJ were medical reports from several doctors who had treated Yousif (R. 114–26, 129–76). At the time of the hearing Yousif was 48 years old and had a high school education (R. 23).

At the time of the hearing Yousif testified that her condition was a little better than at the time she had to leave work in January 1992, when she not only suffered pain whenever she sought to use her right hand or arm—she could not then even hold a telephone or lift a spoon to eat (let alone lifting articles at work), she suffered muscle stiffness and swelling from the forearm to the wrist, she had a knifelike pain whenever she tried to use her finger—but she also had pain in the arm when she was not using it (R. 39–40). As of the hearing date she said she felt no pain when just sitting, but the pain continued whenever she used the arm or hand, even to dress or undress or to eat (R. 41). Indeed, her inability to use her right hand had led to pain in her left arm and shoulder from overuse (R. 41–42, 44).

In his March 25, 1994 written opinion the ALJ concluded from the "somewhat equivocal" medical records, in combination with Yousif's testimony about her pain, that she

was under a disability from January 14, 1992 through March 3, 1993 (R. 19). In part he pointed to reports by Yousif's chiropractor Dr. James Abele describing her "palpable swelling and tenderness of the right lateral epicondyle" and "hypoesthesia of the right C6 dermatome distal to the elbow" (R. 19).[2] ALJ Brooks also relied on reports from Dr. Leon Benson that Yousif experienced a "limited range of motion in the right elbow with tenderness and swelling," that she complained that any movement of her right arm caused pain and that she had been given cortisone shots that provided only temporary relief from pain (R. 19).

ALJ Brooks also discussed other medical evidence that was "not as persuasive in supporting a finding of disability" (R. 19). He referred to EMG studies that showed no evidence of compression neuropathy and to Dr. Benson's observations that Yousif had full range of motion in her right arm, that she could lift 40 pounds with her right hand by August 1992 and that there was no objective evidence of loss of strength and no visible problems on x-rays (R. 19). ALJ Brooks noted that Yousif's family doctor Dr. Adnan Barazi was the only doctor who said that Yousif could not work, but that it was also "unclear whether he was referring only to her past relevant work or to any work" (R. 19).

Nonetheless the ALJ explained why he gave Yousif the "benefit of the doubt" about her complaints from her claimed onset date through March 3, 1993, in material part because he found her complaints of pain credible (R. 19). Indeed, in that respect Yousif's subjective pain and its effect on her (causing an inability to perform work-related activities) seemed to be dispositive, as the ALJ concluded that Yousif was unable to perform even sedentary work and that she was therefore disabled beginning on January 14, 1992 (R. 19).

ALJ Brooks went on to find that as of March 4, 1993 Yousif had experienced "medical improvement" such that she was able to perform a partial range of light work (R. 19–22), referring for that purpose to doctors'

2. Yousif's injury is often referred to as "tennis elbow."

statements that he said supported the conclusion that Yousif could perform limited work activity after that date (R. 20, 21). Specifically the ALJ pointed to a March 3, 1993 letter by Dr. John Ruder based on a March 1, 1993 physical examination (R. 20). ALJ Brooks relied on Dr. Ruder's observations that Yousif had full range of motion in her right shoulder, wrist and fingers; that she had tenderness over the lateral epicondyle but no soft tissue swelling in that area; that she had intact sensation in the fingers of the right hand; that x-rays showed no degenerative changes associated with lateral epicondylitis; and that Yousif could lift up to 20 pounds with her right hand but could not use her right arm for frequent motions (R. 20). He also described Dr. Ruder's letter as "indicating the claimant can perform limited work activity" (R. 20). In addition the ALJ relied on Dr. Abele's July 1993 report (R. 21) finding that Yousif could work and that she could lift up to 10 pounds with her right arm, but that she could not climb, grasp, engage in repetitive handling, push or pull with that arm (R. 21).

ALJ Brooks admitted that "the medical evidence does show some objective problems" (R. 21). Nonetheless, because he found Yousif's complaints of disabling pain since March 4, 1993 lacking in credibility, he said that there was sufficient evidence to support a finding of medical improvement (R. 21).

ALJ went on to find—again giving Yousif "the full benefit of the doubt"—that she could not use her right arm to lift more than 10 pounds, or for frequent motions or grasping, repetitive handling, pushing or pulling, and that she could not climb (R. 21). Yousif was therefore restricted to a part of the full range of light work (R. 21). Indeed, the ALJ found that those limitations prevented her from returning to her past light work as a bindery operator, thus shifting the burden to Commissioner to show that she could perform significant numbers of jobs existing in the national economy. Based on the testimony of Vocational Expert Mendrick that there were 1,800 available jobs that could primarily be performed with the use of only one hand at a time, and with only occasional rather than frequent use of both hands (ticket taking and visual inspection jobs), the ALJ found that Yousif was not under a disability after March 4, 1993 (R. 22).

Yousif next filed a request for review with the Appeals Council. In addition to arguing that the ALJ's finding of medical improvement was not supported by substantial evidence (R. 181–82), Yousif submitted two new items of evidence—additional notes from Dr. Barazi and a report of her August 1994 surgery for carpal tunnel and lateral epicondyle release—that she claimed established the credibility of her complaints of pain, and consequently the error in the ALJ's conclusion that she was not disabled after March 4, 1993 (R. 181–82).

On January 3, 1995 the Appeals Council denied Yousif's request for review. First the Council ruled that Dr. Ruder's March 3, 1993 letter was substantial evidence that Yousif's condition had improved at that time and that Yousif was then able to return to work with certain limitations (R. 4). As for the newly submitted evidence, the Council found that it did not alter that conclusion (R. 5).

By denying Yousif's request for review, the Appeals Council made the ALJ's decision Commissioner's reviewable final decision (Section 405(g); Reg. § 404.981). Yousif then exercised her right under Section 405(g) to appeal Commissioner's decision to this Court.

Yousif makes two claims here. First she argues that the Appeals Council erred as a matter of law when it held that the "new evidence" submitted with Yousif's request for review did not provide a basis for changing the ALJ's decision (P.Mem. 9–11). Second she contends that the ALJ's determination that Yousif showed "medical improvement" after March 4, 1993 was not supported by substantial evidence (P.Mem. 11–18).

*Appeals Council Decision*

■ Commissioner's Reg. § 404.970(b) provides:

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the

administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

This Court may review the Appeals Council decision as to whether new evidence is new and material (*Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir.1992)),[3] as well as whether it "relates to" the period on or before the ALJ decision. New evidence is material "if there is a 'reasonable possibility' that it would change the outcome" (*Nelson*, 855 F.2d at 506).

As stated earlier, Yousif submitted two pieces of evidence to the Appeals Council. One was a sheet of notes by Dr. Barazi that briefly summarizes each contact Dr. Barazi had with Yousif between February 17, 1992 and August 16, 1994 (R. 177), and the other was a two-page "Report of Operation" ("Surgery Report") that describes in some detail the surgery performed upon Yousif on August 29, 1994 (R. 178–79). Yousif urges that the new evidence shows that her pain continued through 1993 and 1994, so that the ALJ was wrong in determining that her reports of pain were not credible after March 4, 1993. Commissioner counters that the new evidence would not impact the ALJ's decision because it does not show that Yousif experienced pain while her right arm was at rest, which is what the Commissioner claims was dispositive in the ALJ's decision as to disability during the closed period. Commissioner also argues that the new evidence is time-barred.

■ That latter argument is persuasive as to the Surgery Report. Surgery that took place on August 29, 1994 does not relate back to the period at issue: that between March 4, 1993 and the ALJ's March 25, 1994 decision. While Yousif's argument may appeal to common sense, it cannot survive the timing requirement imposed by Reg. § 404.970(b) that new evidence may be considered "only where it relates to the period on or before the date of the administrative law judge hearing decision." Yousif's expansive reading of the "relates to" requirement would allow a claimant to challenge an ALJ's adverse ruling by newly consulting additional doctors to repair any defects cited by the ALJ. At some point the evidence must close and the ALJ must make a decision based on the evidence before him or her. It is surely rational for the Regulation to require that a line be drawn at the time the ALJ makes a decision, and the Surgery Report is on the wrong side of that line.

■ Dr. Barazi's notes pose a different problem. In the sense that the sheet of notes was not before the ALJ at the time of his decision, it is "new evidence." Eleven of the one-line entries pre-date the ALJ's March 25, 1994 decision and thus meet the "relates to" requirement (R. 177), although five other entries dated after the ALJ's March 25, 1994 decision fail that test for the same reason as the Surgery Report.

Because some of the entries are new evidence relating to the period before the ALJ's decision, the next question is whether there is a reasonable possibility that the new evidence would change the outcome of the ALJ's decision (*Nelson*, 855 F.2d at 506). That question gets a "No" answer.

To begin with, eight of the eleven entries pre-date September 22, 1992, when Dr. Barazi filed an "Attending Physician's Statement" (R. 163–64) that was before the ALJ when he made his decision. It is hard to see how eight lines of cryptic notes in the "new" Barazi report add anything to the September

3. Contrary to Commissioner's intimation (D.Mem. 11 n. 4), the pre-*Scivally* opinion in *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir. 1991) does not insulate the Appeals Council's refusal to consider new and material evidence from review by this Court. As *Eads v. Secretary of HHS*, 983 F.2d 815, 817 (7th Cir.1993) teaches after referring to *Damato*:

But if the refusal rests on a mistake of law, such as the determination in *Nelson v. Bowen*, 855 F.2d 503, 506–08 (7th Cir.1988), that the evidence newly submitted to the Appeals Council was not material to the disability determination, the court can reverse, as we did there. *Eads* and *Nelson*—not *Damato*—are applicable here.

22, 1992 report.[4] And the other three entries (falling between September 22, 1992 and March 25, 1994) would have been of little help to the ALJ. As best as they can be deciphered, those entries read (R. 177):

October 1, 1993—M.R.I. Rx Amoxil & Pfizer [unreadable]

November 23, 1993—Generalized arthritis of wrist fingers rt side. Rx Prednisone

March 4, 1994—Carpal tunnel syndrome. Rx advised steroid injections.

Those entries would give the ALJ little (if any) information that was not already before him when he made his decision, and surely they would not have had a reasonable possibility of changing the outcome of his medical improvement determination. Hence the decision of the Appeals Council not to reverse the ALJ based on new evidence is affirmed.

### ALJ's Finding of Medical Improvement

Yousif next launches several attacks on ALJ Brooks' finding that Yousif had experienced medical improvement. In that respect an award of disability may be terminated on a "finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling" (Section 423(f)). Benefits may be terminated on the basis of "medical improvement" only if substantial evidence demonstrates that (Section 423(f)(1)):

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) the individual is now able to engage in substantial gainful activity....

■ Two terms in the preceding sentence call for elaboration. First, "substantial evidence" is more than "a mere scintilla of proof" (*Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir.1995)) but "something less than the weight of the evidence" (*Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir.1986) (per curiam)). As *Diaz*, 55 F.3d at 305 reiterates, quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971):

[T]he standard of substantial evidence requires no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Second, Reg. § 404.1594(b)(1) defines "medical improvement" as:

any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

As already indicated, ALJ Brooks found that Yousif had experienced medical improvement after March 4, 1993 and that she was thereafter capable of part of the full range of light work (R. 20–22). Throughout his written findings the ALJ stated that his determination of medical improvement was based on doctors' statements, specifically statements by Drs. Ruder and Abele.[5] But having done so, ALJ Brooks added this confusing transition between his discussion of Dr. Ruder's and Dr. Abele's reports and his discussion of Yousif's complaints of pain (R. 21):

Thus, since March 4, 1993, the medical evidence does show some objective problems. However, the undersigned does not believe the claimant experiences pain to the extent she alleges....

In reaching this determination, the claimant's complaints of disabling pain since March 4, 1993 have been found not credible.

---

4. For example, the May 22, 1992 entry reads "No relief. Rx to cont. on medication." Another typical entry from June 26, 1992 reads "No relief whatsoever. Tenderness. Rx to cont. on medication." That Yousif had continuing pain and was being prescribed unnamed medication was information already before the ALJ at the time of his March 25, 1994 decision.

5. For example, at R. 20 he said:

This conclusion [of medical improvement] is based on doctor statements indicating the claimant can perform limited work activity since that date.

ALJ Brooks reiterated at R. 21 that his finding of medical improvement was "based on the reports of Dr. Ruder and Dr. Abele."

Although ALJ Brooks pointed out that Social Security Ruling ("SSR") 88–13 and Reg. § 404.1529 dictate that a claimant's complaints of pain must be considered, it is apparent that the ALJ's finding of medical improvement rested on three legs: the reports from Doctors Ruder and Abele *and* a lack of credibility in Yousif's complaints of pain.

Yousif attacks the ALJ's credibility findings and also urges that neither Dr. Ruder's report alone nor the medical evidence as a whole establishes medical improvement. Those contentions will be considered in turn.

### 1. *ALJ Brooks' Credibility Findings*

In the portion of his ruling in which he explains his finding of medical improvement, ALJ Brooks made these comments about the credibility of Yousif's complaints of pain (R. 21):

> In reaching this determination, the claimant's complaints of disabling pain since March 4, 1993 have been found not credible. The claimant takes only mild over-the-counter medication. She does not take strong codeine or morphine-based analgesic, medication usually prescribed for sever [sic] and unremitting pain. She does not report usual signs of severe pain, such as abnormal weight loss, muscle atrophy, or problems sleeping or concentrating. She is not undergoing any treatment for her pain.

Yousif contends that the ALJ's inferences were illogical and that the ALJ made improper independent medical evaluations.

■ While deference is generally owed to an ALJ's credibility determinations, a reviewing court has more leeway "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations" (*Herron v. Shalala,* 19 F.3d 329, 335 (7th Cir.1994)). Such is the case here: Insofar as Yousif challenges either the inferences drawn by the ALJ from the record or the ALJ's alleged independent medical assessments, this Court may more closely scrutinize the ALJ's credibility determinations.

■ First as to the ALJ's comment about the medication taken (or not taken) by Yousif, it is true that Reg. § 404.1529(c)(3)(iv) allows the ALJ to consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms" in considering the claimant's complaints of pain. But here ALJ Brooks failed to take into account that Yousif testified (R. 42) and Dr. Benson confirmed (R. 140) that Yousif had adverse reactions to the anti-inflammatory pain medication prescribed for her, prompting her to stop taking the medication. That makes the ALJ's negative inference entirely inappropriate—it simply does not follow that because Yousif was not taking strong medication she was not in pain.[6]

ALJ Brooks' determination that Yousif was not in pain because she was not seeking treatment is equally troublesome. Reg. § 404.1529(c)(3)(v) allows the ALJ to consider "[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms." But once again the ALJ did not consider treatments that Yousif had received but that were later stopped, including cortisone shots (R. 42, 136, 138, 139) and physical therapy (R. 145–47). Moreover, rehabilitation efforts were ceased because they exacerbated Yousif's condition (R. 164, 171). Again the ALJ's negative inference was improper.[7]

---

6. Although Commissioner's regulations allow the type and dosage of medication to be considered, it is certainly problematic for the ALJ to observe that Yousif was not taking the type of medication "usually prescribed" for the pain of which she was complaining (R. 21). As discussed later, for the ALJ to opine on what a doctor "usually" does impermissibly crosses the boundary into territory reserved for independent *medical* evaluations.

7. Indeed, our Court of Appeals has questioned whether a claimant's failure to pursue treatment is even relevant to whether he or she is disabled (*Herron,* 19 F.3d at 336). In that respect the Tenth Circuit does not allow the ALJ to draw a negative inference based on a claimant's failure to pursue treatment unless a number of other factors are considered, including whether treatment would restore the claimant's ability to work, whether treatment was prescribed, whether treatment was refused and whether the refusal was without justifiable excuse (*see Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir.1993), cited favorably in *Herron,* 19 F.3d at 336 n. 11).

Finally Yousif urges that the ALJ's remaining explanation for his noncredibility finding—Yousif's lack of physical manifestations of pain—was an improper medical evaluation. It is well settled that an ALJ cannot properly make an independent medical determination when there is no supporting expert testimony (see, e.g., *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982)). Here the ALJ looked for the "usual signs of severe pain"—abnormal weight loss, muscle atrophy or problems sleeping or concentrating—but did not find any, and he therefore inferred that Yousif must not have been in pain. ALJ Brooks' use of the word "usual" is telling. Nowhere in the record is there testimony by a doctor that the pain caused by Yousif's condition "usually" gives rise to the physical manifestations that the ALJ found lacking. It was therefore improper for the ALJ (not himself a doctor) to create the premise that a person who *really* felt the degree of pain of which Yousif complained should have shown signs of abnormal weight loss, muscle atrophy or problems sleeping or concentrating, and then to draw a negative inference when the ALJ did not find those manifestations.

In sum, all three grounds on which the ALJ based his credibility determination were inappropriate. Commissioner nevertheless contends that the ALJ's finding as to the incredibility of Yousif's assertions of pain is justified by Yousif's own testimony. To that end Commissioner begins with the proposition that a claimant's testimony can itself be substantial evidence to support an adverse credibility finding (D.Mem. 8, citing *Diaz*, 55 F.3d at 306 and *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.1995)). Commissioner then points out that Yousif testified that in January 1992 (during the closed period of disability) she felt pain when not using her arm at all but that by the time of the hearing (in November 1993) she experienced pain only when she used her right arm (R. 40). From those two statements Commissioner argues that "the ALJ credited Ms. Yousif's statement [that she has less pain now] and limited her accordingly" (D.Mem. 9). Even if that reasoning were to be accepted—and it is

difficult to see how Yousif's admission that her arm now hurts only when she uses it can support a finding that her complaints of pain are incredible—the fact that the ALJ did not himself cite to Yousif's before-and-after pain testimony in support of his credibility assessment is fatal to Commissioner's argument. Commissioner cannot now scour the record looking for support for a credibility ruling that has otherwise been debased.

Thus the ALJ's finding that Yousif's pain testimony was incredible fails in the terms defined by the ALJ, and it is not salvaged by Commissioner's other efforts. Consequently the ALJ's credibility determination cannot be used to support a finding of Yousif's purported medical improvement.

### 2. *Medical Evidence*

Yousif also contends that without the ALJ's credibility determination to support them, the reports from Drs. Ruder and Abele do not provide substantial evidence of medical improvement. Here too Yousif's position is sound.

ALJ Brooks referred to a number of observations in Dr. Ruder's report to support the finding of medical improvement (R. 20):

> Dr. Ruder indicated there was full range of motion in the right shoulder, wrist and fingers. There was tenderness over the lateral epicondyle, but no soft tissue swelling in that area. Sensation was intact in the fingers of the right hand. X-rays showed no degenerative changes associated with lateral epicondylitis. Dr. Ruder concluded that claimant could lift up to 20 pounds with her right hand, but could not use the right arm for frequent motions.

However, under Commissioner's own regulations medical improvement must be based not on a single report as such, but rather on a comparison between the medical report or reports that reflect an allegedly "improved" claimant and the medical reports at the time of the most recent favorable decision of disability (Reg. § 404.1594(b)(7))—in this case during the closed period between January 14, 1992 and March 3, 1993. And because Dr.

---

ALJ Brooks' noncredibility finding based solely on Yousif's failure to pursue treatment would

certainly be flawed under the Tenth Circuit analysis (and, by inference, under *Herron* as well).

Ruder had never examined Yousif before the March 1, 1993 examination, the only such before-and-after comparison that can be made is between Dr. Ruder's March 1, 1993 observations and the objective medical observations made by other treating physicians during the closed period.

Within that framework, Dr. Ruder's medical findings cited by ALJ Brooks cannot be read as "improvements," because similar findings were reported during the closed period when Yousif *was* found to be disabled. For example, Yousif had a full range of motion in her right shoulder, wrist and fingers—and even in her right elbow—in June 1992 (R. 140). Before March 4, 1993 doctors reported that during some visits (e.g., R. 114, 136, 139) Yousif had tenderness over the lateral epicondyle and/or swelling, while during other visits (e.g., R. 138, 142) she did not. "No problems" were noted in x-rays before March 4, 1993 (R. 19, 142, 148). Dr. Ruder's March 1993 conclusion that Yousif could lift 20 pounds with her right hand but could not use it for frequent motions is actually less optimistic than Dr. Benson's August 1992 opinion that Yousif could lift up to 40 pounds (R. 19). In short, each of Dr. Ruder's specific findings cited by the ALJ is no more favorable than reports during the period when the ALJ found that Yousif had been under a disability.

Indeed, the ALJ glossed over—by omitting any mention in his written findings—some of Dr. Ruder's observations that really negated any improvement on Yousif's part. Particularly important is this passage from Dr. Ruder's "Comments and Recommendations" section (R. 134):

> The prognosis is guarded in that she has not shown significant response to measures undertaken so far. It is not clear that surgical intervention would offer her significant improvement.

Thus Dr. Ruder specifically found Yousif's condition "guarded," he said nothing about her condition improving, he observed not that medical treatment had made her better but that "she has not shown significant response" to her treatment to date, and he held out no real hope for surgical intervention. It is true that he followed the quoted passage with this qualified prognosis (*id.*):

> Provided she was instructed in proper lifting technique, I believe that she could be given the opportunity to return to the work place with restrictions being, initially, not lifting more than 20 pounds with the right upper extremity or using the right upper extremity for highly frequent motions.

But that speculative level of belief (it is unclear just what probative force is to be attributed to a belief that a claimant "could be given the opportunity to return to the work place") was not reflective of "improvement," for Drs. Benson and Abele had made similar recommendations during the time period when the ALJ had found Yousif was disabled (R. 114, 171).

 As stated earlier, ALJ Brooks also relied on Dr. Abele's July 19, 1993 report (R. 21):

> Dr. Abele also indicated the claimant could work in a July 1993 report. He felt the claimant could lift up to ten pounds with her right arm. He said she should not climb because of reduced grip strength in the right hand. He also said she could not do grasping, repetitive handling, or pushing and pulling with the right arm.

But any such reliance in support of a finding of Yousif's "improvement" is patently flawed. Here a before-and-after comparison is directly available, for Dr. Abele had also submitted an "Attending Physician's Statement" on July 14, 1992 during the closed period of disability.[8] Side-by-side comparison of his

---

8. Commissioner contends (D.Mem. 8) that Dr. Abele's July 19, 1993 report is irrelevant because it is based on a last office visit of April 10, 1992. But Commissioner has simply missed the fact that Dr. Abele's billing records on which Commissioner mistakenly relies for that contention (R. 174–75) were only copies of the records that had been submitted on March 5, 1993 to an office dealing with Yousif's workers' compensation claim (R. 173). By definition those records could not reflect whether Dr. Abele had or had not examined Yousif *after* that transmittal. And Commissioner also ignored (though she cites) Yousif's testimony (R. 43) that the last time she saw Dr. Abele he did not charge her, so that the date of the last *billing* is not dispositive. By its very nature, this is an evidentiary matter on which the ALJ's decision controls if it passes the

July 1992 and July 1993 reports shows graphically that the later report does not exhibit medical improvement. Indeed, the two reports are virtually identical, with language from one repeated verbatim in the other.[9] Thus Dr. Abele's report not only does not reflect any medical improvement, but it actually undercuts any notion that such improvement had taken place even three months *after* the March 1993 date chosen by the ALJ.[10]

Thus Commissioner has failed in this area as well. Neither Dr. Ruder's report nor Dr. Abele's report, nor the two of them together, can qualify as substantial evidence of medical improvement.

### Conclusion

It is apparent that when the ALJ made his decision on March 25, 1994 he viewed what he had before him as a close case. When he resolved the issues by finding that Yousif had been disabled during 1992, that determination was plainly supported by substantial evidence—a determination that no reviewing court can overturn under the standard for judicial review.[11] But where the ALJ went astray was in proceeding from that unexceptionable finding to a determination that Yousif's status changed on March 3, 1993 because she had then shown medical improvement. *That* determination was without

substantial evidentiary support, so that it violated Commissioner's regulation that specifies that only a finding of medical improvement—which must be supported by substantial comparative evidence—can trigger the termination of disability payments.

There is no genuine issue of material fact, and Yousif is entitled to a judgment as a matter of law. Commissioner's decision denying disability benefits to Yousif is reversed.[12]

---

"substantial evidence" test, and here nothing in the record negates Dr. Abele's having seen Yousif at the time of Dr. Abele's July 1993 report—to the contrary, the report itself expressly states that it was based on both patient history *and* a physical examination, as the report form specifically required of the doctor (R. 130). That directly supports ALJ Brooks' treatment of the examination report by Dr. Abele as having taken place after March 5, 1993.

9. For example, part of the July 1992 report reads (R. 170):

Palpable swelling and tenderness rt. lat. epicondyle, <10 lbs. grip strength rt. hand, hypoesthesia of right C6 dermatome distal to elbow.

In July 1993 Dr. Abele reported (R. 129):

Palpable tenderness and swelling of right lateral epicondyle, less than 10 lbs. grip strength right hand, hypoesthesia of right C6 dermatome distal to elbow

Similarly, both reports opine that Yousif "may return to work if it does not require use of right hand" (R. 130, 171).

10. One last point should be made as to Dr. Abele—one rejecting Commissioner's argument (D.Mem. 7–8) that Dr. Abele's report should not be considered because a chiropractor is not an acceptable medical source and cannot contradict the findings of a medical doctor. Commissioner cannot really seek to trash Dr. Abele's report outright in that fashion—although chiropractors are not of course M.D.s, Commissioner's own Reg. § 404.1513(e)(3) specifically lists the chiropractor as an example of an "other practitioner" whose reports can be used to help the ALJ understand how an impairment affects the claimant's ability to work.

11. Commissioner does not question the validity of that determination.

12. As stated at the outset, this result grants Yousif's summary judgment motion, denies Commissioner's cross-motion and moots Yousif's alternative motion for a remand.