**Audrey WIRTH, Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner of the Social Security Administration, Defendant.**

No. 02–C–1249.

United States District Court, E.D. Wisconsin.

May 12, 2004.

David F. Traver, Milwaukee, WI, for Plaintiff.

Nora S. Barry, Milwaukee, WI, for Defendant.

## *DECISION AND ORDER*

ADELMAN, District Judge.

### I. BACKGROUND

Plaintiff Audrey Wirth applied for social security disability benefits on March 20, 2000, alleging that she was unable to work due to back pain and depression. Her application was denied initially and on reconsideration, after which she requested a hearing before an Administrative Law Judge (ALJ). Plaintiff appeared at the hearing pro se, and the ALJ took testimony from plaintiff, plaintiff's daughter and a vocational expert (VE).

On June 17, 2002, the ALJ issued a decision finding plaintiff not disabled. The ALJ followed the familiar five step sequential evaluation process.[1] First, she found that plaintiff had not engaged in substantial gainful activity since the filing of her application. Second, she concluded that

---

1. Pursuant this process, the ALJ must determine: (1) whether the claimant is presently unemployed; (2) if so, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether any of the claimant's impairments are listed by the Administration as being so severe as to preclude substantial gainful activity; (4) if not, whether the claimant possesses the residual functional capacity ("RFC") to perform her past work; and (5) if not, whether the claimant is able to perform any other work in the national economy in light of her age, education and work experience. The claimant will automatically be found disabled if she makes the requisite showing at steps one through three. If the claimant is unable to satisfy step three, she must then demonstrate that she lacks the RFC to perform his past work. If she makes this showing, the burden shifts to the Commissioner to establish that the claimant can engage in some other type of substantial gainful employment. The Commissioner may carry this burden either by relying on the testimony of a VE, who evaluates the claimant's ability to perform work in the national economy in

plaintiff suffered from severe impairments—fibromyalgia, degenerative disc disease, migraine headaches, chronic neck and back pain, and bulging discs of the lumbar spine. However, at the third step, she found that none of these impairments met or equaled a listed impairment. Fourth, the ALJ found that plaintiff was unable to perform her past relevant work. Finally, given plaintiff's functional capacity (sedentary work), age (49), and educational level (GED), the ALJ concluded that plaintiff was not disabled under Grid Rule 201.21. Plaintiff requested review by the Appeals Council, but her request was denied.

Having exhausted her administrative remedies, plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review. The matter was assigned for pre-trial proceedings to Magistrate Judge Aaron E. Goodstein. However, because the parties did not consent to the exercise of jurisdiction by the magistrate judge, Judge Goodstein could only make a recommendation on plaintiff's appeal. *See* 28 U.S.C. § 636(b).

On April 8, 2004, Judge Goodstein issued a recommendation that the Commissioner's decision be reversed and the matter be remanded for further proceedings. First, Judge Goodstein found that plaintiff had not validly waived her right to counsel at the hearing, and that the ALJ had failed to fully and fairly develop the record in the absence of counsel. Second, he concluded that the ALJ's credibility determination did not comport with SSR 96–7p and was based on an incomplete record. Third, he found that the ALJ's RFC determination was suspect because the record was not fully developed. Fourth, he concluded that the ALJ's decision to rely on the Grid

at step five, as opposed to basing her ruling on the testimony of the VE, was suspect because of the deficient development of the record. Thus, he recommended that the ALJ's decision be reversed.

Finally, Judge Goodstein concluded that a remand rather than a partial judicial award was the proper remedy. Plaintiff had argued that under the Grid and based on the ALJ's findings she was now (and at all times after her 50th birthday had been) disabled. Thus, she asked the court to remand with instructions that (1) she be awarded benefits commencing on her 50th birthday and (2) there be re-hearing regarding the period prior to age 50. Judge Goodstein rejected the argument, stating that "generally, the role of this Court is not to consider new facts (i.e., the plaintiff is now age 50), but rather to review the ALJ's decision based on the record as it stood before her, and determine whether that decision was based on substantial evidence." (Recommendation at 16.)

The Commissioner has not objected to the recommendation. However, plaintiff partially objects, renewing her argument that the proper remedy is a judicial award of benefits for the time period after her 50th birthday and a remand for a determination of her eligibility prior to that. Judge Goodstein's recommendation and plaintiff's objections are before me now.

## II. APPLICABLE STANDARDS OF REVIEW

### A. Magistrate Judge's Recommendation

■ Where a party timely objects to a magistrate judge's recommendation, I conduct a de novo review of the objected-to portions, 28 U.S.C. § 636(b)(1); *see United*

---

light of her limitations, or through the use of the "Medical–Vocational Guidelines," (a.k.a. "the Grid"). The Grid is a chart that classifies a person as disabled or not disabled based

on her exertional ability, age, education and work experience. *See, e.g., Samuel v. Barnhart*, 295 F.Supp.2d 926, 928–29 (E.D.Wis. 2003).

*States v. Raddatz,* 447 U.S. 667, 673–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), and may review de novo any other aspects as I see fit, *see Delgado v. Bowen,* 782 F.2d 79, 81–82 (7th Cir.1986). Based on plaintiff's partial objection, I will conduct a de novo review of the remedy recommended by Judge Goodstein. Because the Commissioner has not objected to Judge Goodstein's findings of reversible error, and because I see no clear error in such findings, that portion of the recommendation will be adopted. *See Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir.1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error.").

## B. ALJ's Decision

Under § 405(g), a district court may affirm, modify or reverse an ALJ's decision, with or without remanding the case for a rehearing. However, the court's review of the ALJ's the decision is limited, and the ALJ's factual findings must be upheld if supported by substantial evidence. 42 U.S.C. § 405(g); *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir.1995). A reviewing federal court may not decide the facts anew, re-weigh the evidence or substitute its judgment for that of the ALJ. *Powers v. Apfel,* 207 F.3d 431, 434 (7th Cir.2000). Where conflicting evidence would allow reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the ALJ. *Binion on Behalf of Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997).

■ Because the § 405(g) standard of review presumes that the ALJ will determine whether the claimant is disabled, ordinarily, when a district judge reverses an ALJ's decision the appropriate remedy is a remand for further proceedings rather than a judicial award of benefits. *Gotz v. Barnhart,* 207 F.Supp.2d 886, 901 (E.D.Wis.2002). "However, there are two exceptions to the general rule: (1) where the record overwhelmingly supports a finding of disability; and (2) where the delay involved in repeated remands has become unconscionable, or the agency has displayed obduracy in complying with the law as set down by the court." *Worzalla v. Barnhart,* 311 F.Supp.2d 782, 800 (E.D.Wis.2004) (citing *Gotz,* 207 F.Supp.2d at 901–03).

## III. DISCUSSION

### A. Positions of the Parties

The ALJ found that plaintiff was 49 years old (a "younger" individual under SSA regulations), had a GED, and was limited to sedentary work, with no acquired work skills that were transferable to the skilled or semi-skilled activities of other work. Thus, Grid Rule 201.21 directed a finding of "not disabled." *See* 20 C.F.R. Pt. 404, App. 2, Subpt. P § 202.21.[2]

Plaintiff notes that she is now 51 years old (D.O.B. 2/2/53). Assuming that all of the other findings made by the ALJ remain the same, she would now fall under Grid Rule 201.12, which directs a finding of "disabled." *See* 20 C.F.R. Pt. 404, App. 2, Subpt. P § 202.12.[3] Thus, she contends, the court should order that she be award-

**2.** This Rule provides that a "younger individual" (age 45–49), with a high school education, whose previous work experience was skilled or semi-skilled but whose skills are not transferable to other work, is not disabled.

**3.** This Rule provides that an individual "closely approaching advanced age" (i.e. 50–

54), with a high school education, whose previous work experience was unskilled or none, is disabled. I note that Rule 201.14 provides that an individual with these same characteristics but whose previous work experience was skilled or semi-skilled with no transferable skills is also disabled.

ed benefits for the period of time after she turned 50. A remand for further proceedings should be ordered regarding only the period of time prior to her 50th birthday.

Responding to Judge Goodstein's recommendation that the court not consider facts not before the ALJ, plaintiff states that the ALJ already made a finding as to her date of birth, and the court may take judicial notice of her current age by looking at a calendar. *See Denius v. Dunlap,* 330 F.3d 919, 927 (7th Cir.2003) (discussing judicial notice). Thus, under the first exception set forth in *Worzalla,* the court should order a partial judicial award.

The Commissioner responds that Judge Goodstein recommended remand primarily because the record was not sufficiently developed. If this recommendation is adopted, the court will remand for further proceedings, development of the record, and issuance of a new decision. The current ALJ decision will be vacated. Thus, according to the Commissioner, plaintiff's assumption that her RFC will remain the same upon remand is incorrect.

Plaintiff replies that the Commissioner waived these arguments by not raising them before the magistrate judge. *See United States v. Melgar,* 227 F.3d 1038, 1040 (7th Cir.2000) (discussing waiver). Further, she contends that the Commissioner's argument calls for the court to speculate on what the ALJ might do in the future; the Commissioner provides no basis to assume that the ALJ will find a different RFC on remand. Plaintiff also faults the Commissioner for not responding to her arguments based on *Denius* and *Worzalla.* Finally, she states that the Commissioner's argument assumes that the court has already adopted the magistrate judge's recommendation that remand

is appropriate; if the court enters a judicial award for the period of time after her 50th birthday there will be no further proceedings pursuant to which her RFC could be altered. Further, if the Commissioner believes that plaintiff's condition has improved, she may apply the medical improvement standards under 20 C.F.R. § 416.994.[4]

## B. Analysis

Although plaintiff's legal argument is solidly based, on the basis of the present record, I conclude that a complete remand is the proper remedy.

### 1. Waiver

██ As an initial matter, I conclude that the Commissioner has not waived the arguments she raises in her response to plaintiff's objections. My review of the recommendation is de novo. Implicit in the de novo standard of review is having at your disposal all of the options possessed by the tribunal below. *Cf. United States v. Maull,* 773 F.2d 1479, 1484 (8th Cir.1985) (en banc). The district judge should not be forced into a possibly erroneous decision simply because a litigant failed to raise a potentially meritorious defense before the magistrate. Further, as the court stated in *Melgar,* the waiver doctrine is "flexible," 227 F.3d at 1040, and when the reasons supporting the doctrine (e.g., lack of development of relevant facts; prejudice to a party by the untimely introduction of an argument, *id.*) are not present, district courts should not be bound by it. I have not been deprived of any development of the record in front of the magistrate judge, and I discern no prejudice to plaintiff based on consideration of the Commissioner's legal arguments.

4. Section 416.994 sets forth the factors the Commissioner must consider in deciding whether to terminate benefits previously awarded. Essentially, benefits continue un-

less the claimant has experienced "medical improvement related to [her] ability to work." 20 C.F.R. § 416.994(b).

## 2. Merits

■ Under the first exception to the general rule of remand, the court may order an award of benefits "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994); *see also Gotz*, 207 F.Supp.2d at 901–02. However, in the present case, Judge Goodstein concluded— and neither party disputes—that the record was *not* fully and fairly developed. He recommended that the ALJ's decision be reversed and the matter remanded for further development of the record. It would be incongruous to simultaneously conclude that the ALJ's decision was flawed because she lacked the necessary information to make a reasoned determination, yet rely on portions of that decision to judicially award benefits. Thus, the exception is not properly applied.

■ It is true, as plaintiff asserts, that a claimant's present age is a factor of which a court may take judicial notice based on the ALJ's finding as to her date of birth. Certain factors relevant to a claimant's eligibility for social security benefits (e.g., age, prior work experience) are not subject to change or improvement (as is a claim-ant's health). *See Helmold v. Shalala*, No. 93–C–1897, 1994 WL 854020, at *31994 U.S. Dist.4, LEXIS 3276, at *15–16 (N.D.Ill. Mar. 21, 1994). Thus, in some cases, a change in the claimant's age category could allow a judicial award under the Grid. But a judicial award would not be proper where the ALJ's other predicate findings (and especially her RFC determination) are based on an incomplete record.

■ The cases bear this out: where the plaintiff's passage into a new age category renders her disabled under the Grid a (partial) judicial award may be entered. *See, e.g., Cox v. Apfel*, 166 F.3d 346, 1998 WL 864118, at *3–4 (10th Cir.1998) (awarding benefits after plaintiff's 55th birthday where she reached 55 shortly after ALJ's decision, but remanding for determination of disability prior to reaching such age).[5] But the cases also make clear that the record must be fully developed.

For example, in *Odierno v. Bowen*, 655 F.Supp. 173, 185–86 (S.D.N.Y.1987), the court did what plaintiff asks here: enter a judicial award for the period of time after the plaintiff's 55th birthday (at which point she was considered disabled under Grid Rule 202.02) and remand for a determination of the plaintiff's eligibility prior to that. In *Odierno*, the court found that the

---

5. In *Cox*, the court found that the ALJ erred by failing to apply 20 C.F.R. § 404.1563(b), which provides that where the claimant is within a few days or months of the next age category and use of the older age category would result in a determination that the claimant is disabled, the ALJ should not apply the Grid mechanically; rather, the ALJ must consider whether to use the older age category after evaluating the entire case. *Id.* at 166 F.3d 346, 1998 WL 864118, *3; 20 C.F.R. § 404.1563(b). In light of § 404.1563, it may be more appropriate for the court to enter a judicial award where the claimant is on the cusp of the next age bracket at the time the ALJ makes a decision, *see Levesque v. Barnhart*, No. 01–189, 2002 WL 1585527, at *1, 2002 U.S. Dist. LEXIS 13091, at *3–4 (D.Kan.

July 17, 2002) (awarding benefits where claimant turned 50 eight days before issuance of ALJ's decision), especially where the claimant is about to enter the "advanced age" bracket, *see* 20 C.F.R. § 404.1563(e) ("We consider that at advanced age (age 55 or older) age significantly affects a person's ability to adjust to other work."). In the present case, however, the ALJ issued her decision about eight months before plaintiff turned 50, and plaintiff was at the time of the decision a "younger individual" who was about to enter the "closely approaching advanced age" category. Thus, § 404.1563 does not change my analysis. *See generally Pickard v. Comm'r of Soc. Sec.*, 224 F.Supp.2d 1161, 1168 (W.D.Tenn.2002) (collecting borderline age cases).

ALJ erred in denying plaintiff's claim at step four, where he concluded that plaintiff could return to his past work as a bartender despite the clear testimony of the VE that he could not do so. *Id.* at 183. The court then noted: "Where there are no serious gaps or uncertainties in the record and persuasive proof indicates that the claimant is disabled, reversal and remand solely for calculation of benefits rather than for redetermination is appropriate." *Id.* at 184. Finding the record fully developed, the court proceeded to step five of the sequential evaluation process. The court stated:

> [O]nce the disability evaluation process reaches the fifth step, the burden shifts to the Secretary to prove that the claimant has the residual capacity to perform alternative occupations available in the national economy. Although the Supreme Court has specifically upheld use of the grids so that the Secretary need not take vocational testimony on the existence of specific jobs at each claimant's hearing, the decision carefully noted that the Secretary's own regulations permit automatic application of the conclusion disability or non-disability only when the rules accurately describe a claimant's abilities and limitations. In those instances where a claimant's combination of impairments cannot be matched with a square on the grid, such as when a claimant is afflicted as well with non-exertional or environmental limitations, the Secretary must give full consideration ... to all the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor. When a claimant has presented both strength and nonexertional limita-

tions, the Secretary is to decide whether a finding of disabled may be possible based on strength limitations alone. If the strength limitations alone are not disabling, the Secretary may use the grid as a framework for his analysis, but he cannot rely upon the grid as the sole basis for a conclusion that suitable jobs exist in the national economy.

*Id.* at 185 (internal quote marks and citations omitted).

The court then concluded that the plaintiff had qualified for disability benefits on the basis of the ALJ's factual findings as of his 55th birthday. The plaintiff was of advanced age, capable of only light work, and had limited education; the VE testified that he had acquired no transferable skills. "Rule 202.02 directs the ALJ to find a claimant with these four qualifications to be disabled." *Id.* Therefore, the court ordered that on remand the Commissioner award the plaintiff benefits from his 55th birthday. *Id.*

The court next noted that Rule 202.10 directs that a claimant with the plaintiff's qualifications who is between 50 and 54 years old is not disabled on the basis of strength limitations alone. *Id.* at 186. Thus, on the basis of the record, the court could not direct a finding of disabled for this time period. However, in light of the ALJ's failure to adequately consider the plaintiff's non-exertional limitations, the court also could not uphold the ALJ's determination that the plaintiff was not disabled. *Id.* Thus, the Court remanded the case to redetermine disability from the date the plaintiff first applied for benefits to his 55th birthday. *Id.*

 If the record were fully developed in the present case, *Odierno* would support plaintiff's requested remedy.[6] However, because the record was not ade-

---

**6.** There is an issue in the present case as to whether plaintiff suffers from non-exertional

limitations, which could make use of the Grid

quately developed and the ALJ's RFC determination is therefore suspect, the proper course of action is to remand the entire claim. Other cases support this determination.

In *Morgan v. Sec'y of Health and Human Services*, 664 F.Supp. 273, 275 (E.D.Mich.1986), the ALJ found the plaintiff not disabled under Grid Rule 202.03. Pursuant to that Rule, a person of advanced age, limited to light work, with a limited education, whose previous work experience was skilled or semi-skilled but who had transferable skills, is denied benefits. However, the court found that the ALJ erred in finding that the plaintiff had transferable skills.[7] *Id.* at 276. Because Grid Rule 202.02 provides that a person possessing plaintiff's attributes but who *lacks* transferable skills *is* disabled, the court remanded the matter for an award of benefits rather than further proceedings. *Id.* at 277. In that situation, because the record was fully developed and a remand would have been pointless, the court correctly entered a judicial award. Not so here.

Similarly, in *Heeter v. Sullivan*, No. S87–729, 1990 WL 483669, 1990 U.S. Dist. LEXIS 3119 (N.D.Ind. Feb. 28, 1990), the court held that proper application of the Grid would, based on the ALJ's findings, result in an award of benefits:

In this case, the vocational expert testified that there were several sedentary semi-skilled jobs to which Mr. Heeter could transfer his skills. However, the ALJ specifically found that Mr. Heeter "[did] not have any acquired work skills which [were] transferable to the skilled or semi-skilled work activities of other work ...." (Finding No. 10). Having found that Mr. Heeter lacked skills which would be transferable to skilled or semi-skilled work, the ALJ could not have properly determined that "there [were] a significant number of sedentary semi-skilled jobs in the national economy which he could perform." (Finding No. 12). In effect, the ALJ's Finding No. 12, which stated that Mr. Heeter was capable of performing a significant number of sedentary semi-skilled jobs in the national economy, is in direct conflict with his Finding No. 10, which determined that Mr. Heeter had no work skills transferable to the skilled or semi-skilled work activities of other work. In light of the ALJ's finding that Mr. Heeter was closely approaching advanced age, had a limited education, and lacked any transferable work skills, Grid Rule 201.10 would have directed a finding of "disabled." Because the ALJ's own findings could only have led to a conclusion that Mr. Heeter was disabled, remand for additional fact finding would

---

inappropriate. (*See* Recommendation at 15, citing *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir.1994.)) However, this does not necessarily mean that I must reject plaintiff's argument for a judicial award. As noted in *Odierno*, where a claimant has presented evidence of both exertional and non-exertional limitations, the ALJ must first decide whether a finding of disability is warranted based on the exertional limitations alone. 20 C.F.R. Pt. 404, App. 2, Subpt. P § 200.00(e)(2). In other words, the principle that mechanical application of the Grid is improper where non-exertional limitations are present is a "claimant-friendly" one. *Levesque*, 2002 WL 1585527, at *1, 2002 U.S. Dist. LEXIS 13091,

at *4. The Grid may be used, notwithstanding the presence of non-exertional limitations, if exertional limitations alone would result in a finding of disability. Nevertheless, for the reasons stated, I will not apply the Grid in the present case.

7. The court found that the ALJ committed an error of law by confusing "aptitudes" with "skills." *Id.* at 276. Further, the ALJ committed an error of logic by finding that plaintiff had a transferable skill, but one "transferable" only to a job he was no longer physically capable of performing. *Id.* at 277.

serve no useful purpose, and reversal for an immediate award of benefits is the only appropriate remedy.

*Id.* at 1990 WL 483669, *6, 1990 U.S. Dist. LEXIS 3119, *18–19 (footnote omitted). In the present case, conversely, the gaps in the record preclude reasonable reliance on the ALJ's findings.

Likewise, in *Hiermann v. Bowen,* 669 F.Supp. 595, 598 (S.D.N.Y.1987), the court awarded benefits based on application of the Grid at step five, after rejecting the ALJ's basis for denial at step four. In that case, the court held that the ALJ clearly erred in finding that the plaintiff could return to her past work.[8] *Id.*

> At this point, the ALJ should have applied the medical-vocational guidelines ("the Grid"), 20 C.F.R. Part 404, Subpart P, Appendix 2. Even assuming that plaintiff has a residual functional capacity to perform light work, application of the Grid directs a finding of "disabled" for individuals like plaintiff, who are of advanced age, have unskilled work experience, and have limited knowledge of the English language. *See* Appendix 2, § 202.04. Accordingly, there is no reason to remand this matter for a routine application of the Grid to reach a finding that the plaintiff is disabled. *See Parker,* 626 F.2d at 235 (no need to remand to Secretary of Health and Human Services when record contains persuasive proof of disability and remand would serve no evidentiary purpose); *Piechucki v. Heckler,* 613 F.Supp. 45, 48 (E.D.N.Y.1985) (court need not remand when application of the Grid would inevitably result in an award of disability benefits).

*Id.* at 598–99. In the present case, the record is not so certain; thus, it would not be appropriate for me to simply apply the Grid.

Finally, it is worth noting that there may be a downside for claimants to judicial eagerness to apply the Grid and decide claims. For example, in *Allison v. Apfel,* No. 97–CV–70614, 1998 U.S. Dist. LEXIS 11797 (E.D. Mich. June 17, 1998), the court applied the Grid to award benefits commencing on the claimant's 50th birthday, but denied benefits prior to that date. The court stated:

> "If a court determines that substantial evidence does not support the Secretary's decision the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec. of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994). The Court is satisfied that the VE's testimony supports a conclusion that plaintiff could perform some sedentary jobs existing in significant numbers in the national economy. Based upon the testimony of the VE and the supporting medical evidence contained in the record, it appears that plaintiff retains the residual functional capacity to perform sedentary work in the national economy not requiring the use of his right arm and shoulder. However, it is this Court's opinion that there is not substantial evidence in the record to support a conclusion that plaintiff can perform any work other than sedentary work. Under the Social Security grids, the applicable grid provision is "Table No. 1—Residual Functional Capacity Maximum Sustained Work Capability Limited to Sedentary Work

---

8. In making this finding, the ALJ relied on the opinion on a non-examining physician over that of the plaintiff's treating physicians and several consulting physicians. Further, the report credited by the ALJ did not support the conclusion that the plaintiff could meet all of the exertional requirements of her past work. *Id.* at 598.

as a Result of Severe Medically Determinable Impairment" which is found at 20 C.F.R. Pt. 404, Subpt. P, App. 2. Plaintiff is properly characterized under Rule 201.12 which necessitates a finding of disabled where the claimant is: (1) closely approaching advanced age; (2) a high school graduate; (3) with previous work experience classified as unskilled. Therefore, the Court believes that plaintiff is entitled to a determination of disability under Rule 201.12 of the grid, after June 28, 1993, the date on which plaintiff attained age 50.

*Id.* at *16–18. In other words, the claimant cannot always count on a court willing to definitively resolve claims to remand that portion of the claim prior to her entry into the disabling age bracket.[9]

In the present case, because the record affords no confidence in mechanistic application of the Rules, it would be improper for me to apply the Grid either in favor of or against plaintiff. Therefore, I will remand the entire claim.

## IV. CONCLUSION

Thus, for the foregoing reasons, plaintiff's objections are overruled, and

**IT IS ORDERED** that Judge Goodstein's recommendation is **ADOPTED**, the Commissioner's decision is **REVERSED**, and this matter is **REMANDED** for further proceedings consistent with this order and the attached recommendation.

## RECOMMENDATION TO THE HONORABLE LYNN ADELMAN

GOODSTEIN, United States Magistrate Judge.

### I. Procedural History

Plaintiff Audrey E. Wirth has filed an action under 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Commissioner of Social Security's denial of Supplemental Security Income benefits. This case was randomly assigned to Judge Lynn Adelman and thereafter referred to this court for all pretrial processing. Since the parties have not consented to the exercise of full jurisdiction by a Magistrate Judge, the role of this court is limited to making a recommendation regarding the final disposition of the plaintiff's appeal. *See* 28 U.S.C. § 636(b); Fed.R.Civ.P. 72(b).

Audrey E. Wirth originally filed her application for supplemental security income disability benefits on March 20, 2000 at the age of 47, alleging degenerative disc disease, headaches, chronic back and neck pain, and bulging lumbar discs, which was denied by the Regional Social Security Commissioner. (Tr. 65–70). After reconsideration, the plaintiff was again denied benefits, and subsequently requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. 73–78). The plaintiff made an initial appearance without counsel, before ALJ Margaret J. O'Grady on March 18, 2002, but was allowed a continuance of an additional month to obtain other evidence and representation. (Tr. 28–33). On May 1, 2002 ALJ O'Grady held the hearing, at which the plaintiff (still without representation), the plaintiff's daughter Rebecca Lehr, and Vocational Expert ("VE") John Schroeder testified. (Tr. 12). On June 17, 2002, ALJ O'Grady rendered a decision unfavorable to the plaintiff. (Tr. 12–15). On October 25, 2002 the Appeals Council denied plaintiff's request for review of ALJ O'Grady's decision. (Tr. 6). Plaintiff has filed this action seeking judicial review of the Commissioner's decision.

---

**9.** The *Allison* court did not apply the Grid in denying benefits prior to age 50. However, it did refuse to remand the matter for re-determination of disability during that time period.

## II. Standard of Review

Disability cases are decided by reviewing the final decision of the Commissioner to ensure that it is supported by substantial evidence. *Key v. Sullivan*, 925 F.2d 1056, 1061 (7th Cir.1991). The court does not determine if the claimant is disabled or reweigh the evidence; rather, when evaluating whether substantial evidence exists to support the Commissioner's decision, the court considers the relevant evidence that a reasonable person might accept as adequate to support a conclusion, taking into account anything in the record that fairly detracts from its weight. *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 388 (7th Cir.1992). Substantial evidence may be something less that the greater weight or preponderance of the evidence. *Id.* However, the reasons for rejecting particular evidence, if uncontradicted, must be clearly articulated. *Id.; Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987). Even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir.1989).

There is a five-step test used to determine if a claimant is disabled. The following steps are addressed in order: (1) Is the claimant presently employed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of the listed specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? *Naydihor v. Sullivan*, 743 F.Supp. 631, 634 (E.D.Wis.1990). An affirmative answer at each step leads to the next step in the analysis except that in steps three and five, an affirmative answer leads to a finding that the claimant is disabled. *Id.* A negative answer at any point, other than at step three, leads to a finding that the claimant is not disabled. *Id.*

In this case, the ALJ applied the standard five-step process. At step one, the ALJ determined that the plaintiff had not worked since February, 1998. (Tr. 40). At step two, the ALJ determined that the plaintiff's condition was severe. (Tr. 14). At step three, the ALJ determined that the plaintiff's condition did not meet or exceed one of the listed impairments. (Tr. 14–15). At step four, the ALJ found that the plaintiff could not perform her past relevant work as a postal clerk, packager, prep-cook, or kennel worker. (Tr. 13). Finally at step five, the ALJ determined that the plaintiff had the residual functional capacity (RFC) for sedentary work, and that a significant number of jobs exist in the economy that the plaintiff could perform with this RFC. (Tr. 14). Finally, after applying Medical–Vocational Rule 201.21 ("Grid Rule"), the ALJ determined that the plaintiff was not disabled. (Tr. 14–15).

The plaintiff claims that the ALJ made the following errors, and that they require a reversal: (1) the plaintiff's waiver of right to counsel was not valid; (2) the ALJ did not fully and fairly develop the record of the unrepresented plaintiff; (3) the ALJ's credibility determination was improper because it did not comply with Social Security Ruling ("SSR") 96–7p; (4) the ALJ did not properly evaluate the plaintiff's alleged mental impairment; (5) the ALJ's RFC is not supported by substantial evidence; (6) the ALJ failed to rely on a reliable VE at step five of the evaluation process and instead applied the Grid Rule, and (7) that because the plaintiff is now over the age of 50, and is therefore no longer a "younger" individual, a mechanical application of Grid Rule 201.14 requires an award of benefits.

## III. Right to Counsel and Development of the Record

■ A claimant has a statutory right to counsel at a disability hearing. 42 U.S.C § 406, 20 C.F.R. 404.1700. If properly informed of this right, the claimant may waive it. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir.1991). To be "properly informed," the ALJ must explain to the claimant how an attorney could aid in the proceedings, the possibility of free counsel or a contingency arrangement, the limitation on attorney's fees to twenty-five percent of past-due benefits and the required, subsequent court approval of the fees charged. *Id.* The ALJ must specify state that attorney's fees are limited to *twenty-five* percent of the past due benefits; it is insufficient to simply state that the fees are limited to a certain percentage. *See Castrejon v. Apfel*, 131 F.Supp.2d 1053, 1056 (E.D.Wis.2001).

■ Even if a claimant's waiver of counsel is invalid, this fact alone is not automatic cause for reversing the ALJ's decision. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994). If a claimant establishes that the waiver was invalid, the burden then shifts to the Secretary to show that the ALJ adequately developed the record. *Id.* To do this, the Secretary must prove that the ALJ " '. . . scrupulously and conscientiously probe[d] into, inquire[d] of and explore[d]..all of the relevant facts....' " *Id.,citing Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir.1972). Even if the Secretary proves that the ALJ fully and fairly developed the record, a claimant then has an opportunity to rebut this showing by demonstrating prejudice, by proving that the ALJ did not elicit all of the relevant information from the claimant, or by demonstrating an evidentiary gap. *Id.*

In this case, at the outset of the initial hearing on March 18, 2002, the ALJ explained to the plaintiff that she had a right to be represented by counsel, the benefits of being represented by an attorney, and that the attorney's fees would be limited to a certain percentage and subject to court approval. (Tr.28–33). The ALJ then gave the plaintiff a month-long continuance, to enable her to obtain counsel and additional medical evidence. (Tr. 31). The ALJ also informed the plaintiff that if she did not obtain counsel by the next hearing, she would still have to proceed. (Tr. 32–33). The plaintiff did not obtain representation by the date of the second hearing, May 1, 2002, and therefore continued without counsel. (Tr. 37–38).

■ Despite the fact that the ALJ advised the plaintiff of the benefits of representation, the plaintiff's waiver of counsel was not valid because she was not "properly informed," of her right as required by *Thomson* and *Castrejon*. At the March 18, 2002 hearing, the ALJ informed the plaintiff of three of the four required elements, but did not specifically state the *twenty-five percent* limitation on attorney's fees. (Tr. 28–29). The ALJ stated only that, "[t]here is a maximum amount allowed by law, and any fee would need to be approved by an ALJ." (Tr. 29). As already indicated, the ALJ must specifically state the *twenty-five percent* limitation, not just that the fees are limited to a certain, unstated percentage. *See Castrejon*, 131 F.Supp.2d at 1056. Without knowing the limited percentage permitted in disability cases, a claimant may erroneously believe that a higher percentage, such as one-third or more could apply. This could serve as a deterrent to a claimant seeking counsel since his or her potential award, if successful, is not as open-ended as it might be in a personal injury case.

When the plaintiff arrived at the subsequent hearing on May 1, 2002, there was no further, substantive discussion of repre-

sentation, the ALJ simply asked why the plaintiff was not able to obtain counsel, and then moved on. (Tr. 38). Because the ALJ did not specifically explain the twenty-five percent limitation on attorney's fees to the plaintiff, she was not "properly informed," of her right to counsel, and therefore the waiver of counsel was not valid.

Because the plaintiff has established that the waiver of counsel was not valid, the burden now shifts to the Secretary to prove that the ALJ fully and fairly developed the record as required under *Binion,* 13 F.3d at 245. If the waiver is invalid, this court is required to remand the case unless this burden is met. *Harris v. Barnhart,* 219 F.Supp.2d 966, 973 (E.D.Wis.2002). Furthermore, when reviewing the ALJ's decision, federal courts must "carefully scrutinize records developed without counsel" because "even the most thorough ALJ is no substitute for an advocate." *Id.* at 974.

█ The Commissioner here has not met her burden of showing that the ALJ fully and fairly developed the record. As will be subsequently discussed in greater detail, the record is deficient in the following respects. The ALJ's questioning of the plaintiff about her mental impairments; the side effects of medications; and the severity of the plaintiff's pain, were all insufficient to be categorized as scrupulous and conscientious inquiries as required. Therefore, the record was not fully or fairly developed.

█ First, the ALJ's questioning of the plaintiff regarding her depression was deficient. To fully and fairly develop the record, if the ALJ learns that the plaintiff is depressed, at a minimum, she must ask if the claimant has spoken to a doctor about the problem. *Naydihor v. Sullivan,* 743 F.Supp. 631, 635 (E.D.Wis.1990). In *Naydihor,* the questioning was held insufficient where the claimant stated he was

coming out of depression, the ALJ asked him if his doctor had referred him to counseling or put him on medication, to which the claimant answered negatively, and then the ALJ moved on. *Id.* Even if the testimony regarding depression was insufficient to support a finding of disability on that basis alone, the testimony is sufficient to warrant further inquiry because it might alter the ALJ's holding that a claimant does not "have an impairment or combination of impairments which meets or equals the requirements of the listing of impairments." *Id.* This limited questioning in *Naydihor* was held to be insufficient to fully and fairly develop the record. *Id.* at 636.

Here, the plaintiff testified that she gets "very depressed." (Tr. 42). The ALJ then asked the plaintiff whether she was taking any medication to treat her depression. *Id.* When the plaintiff answered yes, the ALJ asked only who prescribed it, and then moved on to questions about other medications. *Id.* Applying *Naydihor,* it was incumbent on the ALJ to ask the plaintiff more probing questions about her depression than simply who prescribed the medication. *See Naydihor,* 743 F.Supp. at 635–636. Based on these two questions, the ALJ could have no idea as to the severity or the overall limiting effects of the plaintiff's depression, or its effects on the overall disability determination when combined with the plaintiff's other impairments. But in her decision, the ALJ simply concluded that the plaintiff's depression was not severe. (Tr. 14). The ALJ never explained how or why she came to this conclusion, and from the few questions she asked the plaintiff, this Court cannot conclude that the determination was supported by substantial evidence. Therefore, the ALJ did not scrupulously probe into the mental condition of the plaintiff, and thus failed to fully and fairly develop the record in this area.

Second, the ALJ did not sufficiently probe into the side effects of the medications the plaintiff was taking. Again, the ALJ asked only what medications the plaintiff was taking, how often, and for what they were prescribed. (Tr. 42–43). Although the plaintiff did state that she did not have any severe side effects on a form she filed over two years prior (Tr. 104), there is no evidence from her decision that the ALJ considered this form or even saw it. (Tr. 12–15). Also, the ALJ seemed to believe that the amount of medications was possibly too substantial, as evidenced by her question to plaintiff whether her doctors knew she was taking all of the medication at once. (Tr. 42). From this, an inference can be drawn that the ALJ entertained the possibility that the medications may have adverse effects, but for some reason the ALJ never actually inquired if there were any such side effects. (Tr. 43). Furthermore, when the plaintiff tried to describe the side effects that she allegedly experiences, the ALJ would not let her finish. (Tr. 55).

The ALJ also failed to probe into the effectiveness of the mental health medication the plaintiff was taking. The plaintiff stated she was taking Xanax for her depression, as prescribed by her primary care physician. (Tr. 42). The ALJ only asked how often the plaintiff took the Xanax and who prescribed it, and then moved on to questioning regarding other medications. *Id.*

Relying on *Binion*, the Commissioner argues that even if this Court determined that the plaintiff's waiver of counsel was invalid, this is not grounds to reverse the ALJ's decision because the plaintiff did not point to any specific facts not brought out during the hearing or new medical evidence an attorney could have produced. But, the plaintiff is not required to produce this evidence until the Commissioner meets her burden of proving that the rec-

ord was fully and fairly developed, which the Commissioner failed to do. *Binion*, 13 F.3d at 245. Even though she was not required to do so, the plaintiff did produce additional evidence not originally in the record that she claims would have been introduced had she been represented by counsel. Pl.'s Reply Br. 2, (Attached Ex. 1, Dr. Shapiro's report of 3/7/01 of Dr. Middleton diagnosing chronic pain syndrome; Ex. 2 bone scan demonstrating arthritis or fracture of right shoulder).

Third, the ALJ also failed to develop the record when she did not attempt to reconcile the conflict between the record and Dr. Kourakis's medical opinion. (Ex. 14F, Tr. 318). The ALJ, not this Court, has the authority to assess the medical evidence and give some evidence more weight than others. *Stuckey v. Sullivan*, 881 F.2d 506, (7th Cir.1989). But, the ALJ must at least articulate enough of her reasoning so this Court can track the reasoning used, to be assured she considered all of the important evidence. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995). The ALJ is also required to contact a treating source or "other medical source" when the opinion "contains a conflict or ambiguity that must be resolved,...or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1) (2003).

In disregarding Dr. Kourakis's report, the ALJ stated that there was no physical basis for the change in capacity. (Tr. 13). In reaching this conclusion, the ALJ was, in effect, stating that Dr. Kourakis's report appeared not to based on medically acceptable techniques. As such, the ALJ was required by section 404.1512 to contact Dr. Kourakis to determine the reason for the discrepancy. *See* § 404.1512(e)(1). Due to this failure to follow up on reports that the ALJ found to be in conflict with the record, she again failed to fully and fairly

develop the record with respect to this medical evidence. Furthermore, the ALJ did not articulate her reasoning thoroughly enough for a reviewing court to be assured she considered all of the important evidence, because as the plaintiff points out, from the ALJ's opinion, this Court cannot know whether the ALJ even considered Dr. Kourakis's second report marked Exhibit 16F. (Tr. 323).

## IV. The Credibility Determination

Here, the ALJ found the plaintiff's subjective complaints were not credible. (Tr. 15). The ALJ determined that, based on the record as it stood, the absence of medical evidence supporting the plaintiff's allegations of severe pain, the plaintiff's failure to follow up with an orthopedist, and the plaintiff's "apparent" dependance on pain medication eroded her credibility. (Tr. 14).

An ALJ's credibility determination is given special deference by a reviewing court because the ALJ is in a better situation to see and hear the witness, and therefore determine credibility. *Shramek v. Apfel,* 226 F.3d 809, 811, (7th Cir.2000). When analyzing an ALJ's credibility determination, the reviewing court will review it in a "commonsensical" way, as opposed to "nitpicking" at it. *Id.* Only when the reasons the ALJ gives for her credibility determination "do not build an accurate and logical bridge between the evidence and the result," will the reviewing court not adhere to the ALJ's credibility determination. *Id.* Furthermore, when making a credibility determination, the ALJ must comply with the requirements of SSR 96–7p. *Brindisi ex rel. Brindisi v. Barnhart,* 315 F.3d 783, 787 (7th Cir.2003). Finally, reviewing courts will not disturb an ALJ's credibility determination unless it fails these aforementioned standards and is therefore "patently wrong." *Diaz v. Chater,* 55 F.3d 300, 308. (7th Cir.1995).

Subjective complaints of pain may be a difficult symptom to determine for anyone other than the person experiencing the pain. Especially because a legitimate source of the pain can be physical or psychological. *Carradine v. Barnhart,* 360 F.3d 751, 754 (7th Cir.2004), (Publication page references are not yet available for this document). The ALJ in *Carradine* held that because there was no medical evidence of physical causes of the pain, the pain could not be disabling. *Id.* at 755. But, on appeal, Judge Posner found that the ALJ's credibility determination had deep logical flaws and was based on "serious errors in reasoning rather than merely the demeanor of the witness ...". *Id.* at 754. The case was remanded with instructions to determine whether the claimant's complaints of pain were caused by psychological factors, which is a legitimate cause of disabling pain, and then determine if they were disabling, but not to discredit the complaints simply because there was no medical evidence of physical causes. *Id.* at 756.

Here, the ALJ determined that the plaintiff's subjective complaints of severe pain were not credible partially because there was no medical evidence of supporting these allegations. (Tr. 14). This is simply not the case, Dr. Wallskog stated that even though the post-surgical etiology of the plaintiff's pain was unclear, he still considered her pain while making his recommendation. (Tr. 246). Furthermore, Dr. Lincer concluded that the plaintiff had chronic pain syndrom with somatization, chronic lower back and neck pain, (tr. 265) and Dr. Galbraith Ph. D. concluded that the plaintiff had chronic pain syndrome and somatization. (Tr. 274).

The ALJ here seems to have made the same mistake in reasoning as the ALJ in *Carradine,* by determining that because there was not a substantial

amount of physical medical evidence of pain, the plaintiff's subjective complaints were therefore not credible. (Tr. 13–15). But simply because the pain may have been made more acute because of a psychiatric condition does not make it an exaggeration or fabrication per se; therefore the ALJ must consider the plaintiff's psychiatric as well as her physical conditions when making a credibility determination with respect to subjective complaints of pain. *Carradine*, 360 F.3d at 755.

■ The plaintiff also argues that the ALJ's credibility determination was improper because the ALJ did not meet her duty to probe or apply all of the Social Security Ruling ("SSR") No. 96–7p factors. An ALJ is not required to "analyze or elaborate on each of the seven factors," *Clay v. Apfel*, 64 F.Supp.2d 774, 781 (N.D.Ill.1999), but is required only to discuss most of the factors and connect them to the credibility determination. *Wates v. Barnhart*, 274 F.Supp.2d 1024, 1040 (E.D.Wis.2003).

Social Security Ruling No. 96–7p requires the ALJ to consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate or aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment other than medications the person receives for pain or other symptoms; and (7) any other factors concerning the person's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p.

Here, the ALJ did not probe into the frequency, duration, severity of the plaintiff's mental impairments or the side effects of the medication prescribed for it as required under SSR 96–7p. After the plaintiff stated that she was depressed and was taking medication for mental health three times every day, the ALJ was required to inquire about the symptoms or limitations flowing from the depression and the side effects of the medication, which she did not do. (Testimony discussed more thoroughly at *supra*, pp. 6–7); & (Tr. 42); SSR 96–7p.

The ALJ is required to probe in to the side effects of the medications the plaintiff was taking for pain under SSR 96–7p. In addition to the medication the plaintiff was taking to treat her depression, she was also taking Tylenol–3 (eight per day), Fiorinal (twice per day), and Soma (eight per day). (Tr. 42). The ALJ did not ask about the possible side effects of any of the plaintiff's medications during the initial discussion of the medications, and then later in the hearing when the plaintiff tried to explain the side effects she allegedly experiences, (". . . I get very groggy . . . ,") the ALJ would not let her finish. (Tr. 42–3, 55). Also, the plaintiff's daughter testified that the plaintiff would experience periods of two or three consecutive days when she seemed intoxicated from the medication, but the ALJ seemed only interested in this testimony to determine if the plaintiff was abusing the medication, and then subsequently began to discuss possible alcohol abuse. (Tr. 55–56).

In *Clifford v. Apfel*, the ALJ did not explain *why* the objective medical evidence did not support the claimant's allegations of pain, rather the ALJ simply stated that the claimant's daily activities were substantial evidence that the claimant did not suffer from disabling pain, and consequently the complaints of pain were not credible. *Clifford v. Apfel*, 227 F.3d 863, 872, (7th Cir.2000). Finding that this conclusory statement was insufficient to build an accurate and logical bridge from the evidence to the conclusion, the Court in *Clifford* therefore held that the credibility determination was not proper. *Id.* Furthermore, the ALJ must explain how a

claimant's allegations of disabling pain are inconsistent with the record, not simply state that they are inconsistent and then move on. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001).

The ALJ in the instant case made a similar conclusory statement without stating why "the absence of medical evidence supporting the claimant's allegations of severe pain...further erode the claimant's credibility...." (Tr. 14). For example, the ALJ did not state why she did not consider Dr. Lincer's diagnoses of chronic pain syndrome, or his recommendation for enrollment in Colombia Hospital's chronic pain program as medical evidence supporting the plaintiff's allegations of severe pain, and consequently, the ALJ did not build an accurate and logical bridge from the evidence to the conclusion she made. (Tr. 265, 266).

Furthermore, the Commissioner's reliance on *Johansen v. Barnhart,* is not helpful, as the facts in *Johansen* are distinguishable from the instant facts, and more importantly, the Court in *Johansen* was not discussing the facts the Commissioner refers to in her brief at page eleven to make a credibility determination, but rather to make a Residual Functional Capacity determination. *Johansen v. Barnhart,* 314 F.3d 283, 287 (7th Cir.2002). In *Johansen,* the claimant exercised at home, walked one mile daily, shopped and did laundry. *Johansen v. Barnhart,* 314 F.3d at 288. While the plaintiff here can do small loads of laundry, can do the dishes in shifts, she can not sweep, vacuum or mop, can not do any exercise, and can only could walk a couple of blocks. (Tr. 44–46).

For the reasons stated above, the ALJ did not consider all of the SSR 97–6p factors, and therefore her credibility determination is not adequate. But, as noted in the previous section, the record was not fully developed, and therefore the credibility determination could not be properly based on this fact alone. Simple logic dictates that the ALJ cannot consider the entire record when making her credibility determination if the record was not fully developed at the hearing.

## V. The Residual Functional Capacity Finding

 The Residual Functional Capacity ("RFC") is that which a claimant can still do, despite the claimant's other limitations. *Clifford v. Apfel,* 227 F.3d 863, 872, n. 7 (7th Cir.2000); 20 C.F.R. § 416.945(a). This is not the same determination as whether a claimant is disabled, but rather it is done to determine the particular type of work the claimant is still able to do. 20 C.F.R. § 416.945(a). In determining a RFC, the ALJ considers the claimant's ability to sit, stand, walk, lift, carry, pull, push, reach, crouch, etc., and the claimant's mental capacity for various work activities. *Id.* §§ 416.945(b), (c). The ALJ must consider the entire record when determining the claimant's RFC, including all relevant evidence, such as the claimant's own subjective statements of what she is able or unable to do. *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995); 20 C.F.R. § 416.945(a). After considering these factors, the ALJ then determines the claimant's ability to engage in various levels of work (sedentary, light, medium, heavy, or very heavy). *Id.* § 416.967. The ALJ's final RFC determination must be supported by substantial evidence. *Clifford,* 227 F.3d at 873.

 Here, the ALJ determined that the plaintiff had a RFC to perform sedentary work, which was lower than the level of the plaintiff's previous work, which was light to medium. (Tr. 3–4). Based on the record as it stands, the ALJ's RFC is supported by substantial evidence, and it is not this Court's job to re-weigh the evidence, but only determine whether the

ALJ's decision is supported by substantial evidence. *Young v. Sec'y of Health & Human Services*, 957 F.2d 386, 388 (7th Cir.1992). But, because the ALJ did not fully develop the record, the RFC can not logically be considered to be based on the 'entire record' as required, and consequently this Court cannot determine whether the RFC was supported by substantial evidence because of the inadequately developed record upon which the RFC was based. 20 C.F.R. § 416.945(a).

## VI. The ALJ's Decision Not To Rely on a Vocational Expert at Step Five of the Sequential Evaluation Process

 At step five in the sequential process, the ALJ determined that the plaintiff's vocational profile and RFC coincided with every factor of Grid Rule 201.21, and applying that rule to the record as the ALJ developed it, required a finding that the plaintiff was not disabled. (Tr. 14–15). But, "[w]here a non-exertional limitation might substantially reduce the range of work an individual can perform, the ALJ must consult a vocational expert". *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir.1994).

The plaintiff asserts that the ALJ was also required to rely on a vocational expert in making her step five determination, and not solely on the Grid Rule, because the plaintiff alleges she has non-exertional limitations, (chronic pain, personality disorder, somatization, and decompensation due to depression) that would reduce the range of work the plaintiff could perform. As such, the ALJ's application of Grid Rule 201.21, alone was not appropriate.

 Once again, this Court cannot conclude that the ALJ's decision to rely exclusively on the Grid Rule as opposed to also basing her decision on a VE's testimony is supported by substantial evidence because the record was not fully and fairly developed, (specifically relevant here are: Dr.

Kourakis's diagnosis of chronic pain syndrom, Tr. 318, and the plaintiff's alleged mental disorder, depression, and side effects from medications). Due to this fact, this Court cannot determine whether the ALJ's decision that the plaintiff's alleged non-exertional limits are unfounded was based on substantial evidence.

## VII. Conclusion

It is therefore recommended that the plaintiff's case be remanded, and the plaintiff be given a new disability hearing. On remand, the ALJ should fully and fairly develop the record regarding plaintiff's depression, her alleged mental disorder, the possible side effects of all of the medications plaintiff is taking, and Dr. Lincer's diagnosis of chronic pain syndrome. After fully and fairly developing the record in these areas, the ALJ should then make new disability and credibility determinations based on this new fully and fairly developed record. Based on this new record, the ALJ should also make a new RFC finding, determine whether the plaintiff has non-exertional limits, and then determine whether reliance on the Medical Vocational Rule alone is proper, or whether vocational testimony is necessary.

The plaintiff finally asserted that even if the ALJ's findings are untouched, this Court should award benefits based on plaintiff's fiftieth birthday, together with the application of Grid Rule 201.14, which require a finding of disability. But, generally, the role of this Court is not to consider new facts (i.e., the plaintiff is now age 50), but rather to review the ALJ's decision based on the record as it stood before her, and determine whether that decision was based on substantial evidence. *Young*, 957 F.2d at 388.

**IT IS THEREFORE RECOMMENDED** that the case be remanded to fully and fairly develop the record consis-

tent with this recommendation. The Clerk of Court is directed to transfer this case to Judge Adelman for consideration of this recommendation.

Any objections to this recommendation shall be made in writing, in accordance with General L.R. 72.3, and filed with the Clerk of Court within 10 days of receipt of this recommendation. Failure to file an objection constitutes a waiver of a party's right to appeal.

April 8, 2004.